Lawrence A. Hobel (Bar No. 73364)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone:    + 1 (415) 591-6000
Facsimile:    + 1 (415) 591-6091
Email:  lhobel@cov.com

Attorneys for Defendants
AEROJET ROCKETDYNE, INC. and
CORDOVA CHEMICAL COMPANY

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Civil Action No.: |
| Plaintiff, | CIVS-86-0063-GEB |
| v. | |
| AEROJET-GENERAL CORPORATION and CORDOVA CHEMICAL COMPANY | |
| Defendants. | |
| PEOPLE OF THE STATE OF CALIFORNIA, ET AL. | Civil Action No.: |
| Plaintiffs, | CIVS-86-0063-GEB |
| v. | |
| AEROJET-GENERAL CORPORATION and CORDOVA CHEMICAL COMPANY | **STIPULATION AND [PROPOSED] ORDER TERMINATING PARTIAL CONSENT DECREE PROVISIONS FOR LAND RESTRICTIONS FOR PARCEL NO. 072-0231-128 (PORTION) AND 072-0231-129 (PORTION)** |
| Defendants. | |

STIPULATION AND [PROPOSED] ORDER TERMINATING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR PARCEL NO. 072-0231-128
(PORTION) AND 072-0231-129 (PORTION)

Civil Action No. CIVS-86-0063-GEB

WHEREAS, this Court entered a Partial Consent Decree ("Decree") on June 23, 1989 by and among Plaintiffs, on the one hand, and Defendants Aerojet Rocketdyne, Inc. (formerly called Aerojet-General Corporation) and Cordova Chemical Company (together, for reference purposes, "Aerojet" or "AR"), on the other hand;

WHEREAS, Paragraph 11 of the Partial Consent Decree ("Partial Consent Decree") provides for restrictions on the use and transfer of lands which are part of the subject Aerojet Rancho Cordova Superfund Site ("Site"), and requires that Aerojet record an Order re Partial Consent Decree, which was recorded in the Official Records of Sacramento County, California, July 20, 1989 Bk 890720, Page 1004 (the "Partial Consent Decree Order").

WHEREAS, Paragraph 11(K) of the Partial Consent Decree and Order provides that Aerojet or any grantee or successor may petition the Court for removal of the land restrictions.

WHEREAS, Paragraph 11(L) of the Partial Consent Decree and Order states:

> Recording by Aerojet or a successor with the Recorder of an approval, order or notice specified below in this Subparagraph (L) shall conclusively establish that Aerojet and any subsequent grantee is free of any restrictions under the Order released by said approval, order or notice:…
>
> (4) A notice that the obligations have terminated pursuant to Paragraph 26 of the Decree to which notice Plaintiffs do not, within twenty (20) days of service, record a notice that such obligations have not so terminated:…

WHEREAS, the Parties have agreed upon the recordation of a Covenant to Restrict Use of Property, a copy of which is attached hereto as Exhibit 1 as to property therein described (the "Property"). This Property is only a portion of the land upon which restrictions have been placed pursuant to the Partial Consent Decree. Particularly,

STIPULATION AND [PROPOSED] ORDER TERMINATING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR PARCEL NO. 072-0231-128
(PORTION) AND 072-0231-129 (PORTION)

2

Civil Action No. CIVS-86-0063-GEB

the Property, known as Former Company Store, comprises approximately 6.96 acres and is a portion of Assessor's Parcel Nos. 072-0231-128 and 072-0231-129 and is part of the Perimeter Groundwater Operable Unit (also known as "OU5") of the Site. Nothing herein modifies any restrictions on use and transfer of lands, as set forth in Paragraph 11, as to any other Aerojet-owned lands at the Site that are subject to Paragraph 11 of the Partial Consent Decree.

The Parties do hereby stipulate:

1.    AR shall be deemed to have provided notice pursuant to Paragraph 11(L)(4) that upon recording of the above described Covenant to Restrict Use of Property the restrictions set forth in Paragraph 11 as to the Property have terminated pursuant to Paragraph 26 of the Decree and the Plaintiffs shall be deemed to have not recorded a notice of objection.

2.    The restrictions set forth in Paragraph 11 as to the Property have terminated pursuant to Paragraph 26 of the Decree.

3.    The above-described Covenant to Restrict Use of Property supersedes as to the Property the Order re Partial Consent Decree recorded in the Official Records of Sacramento County, California, July 20, 1989 Bk 890720, Page 1004 (the "1989 Partial Consent Decree Order"), which shall have no continuing force or effect as to the Property.

**IT IS SO STIPULATED.**


DATED:  October 20, 2017            COVINGTON & BURLING LLP
                                    By    */s/ Lawrence A. Hobel*
                                    Lawrence A. Hobel
                                    Attorneys for Defendants
                                    AEROJET ROCKETDYNE, INC. and
                                    CORDOVA CHEMICAL COMPANY

STIPULATION AND [PROPOSED] ORDER TERMINATING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR PARCEL NO. 072-0231-128
(PORTION) AND 072-0231-129 (PORTION)

3

Civil Action No. CIVS-86-0063-GEB

DATED: October 20, 2017

UNITED STATES DEPARTMENT OF JUSTICE


By  */s/ Cheryl A. Luke*
*(as authorized on September 11, 2017)*
Cheryl A. Luke  VA Bar No.:  26331
Attorneys for Plaintiff
Environmental Enforcement Section
Environmental & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Phone:  (202) 514-5466
Fax:     (202) 616-2467
email:  cheryl.luke@usdoj.gov


DATED: October 20, 2017

XAVIER BECERRA
Attorney General of California
ROBERT W. BYRNE
Senior Assistant Attorney General


By   */s/ Matthew J. Goldman*
*(as authorized on October 19, 2017)*
        Matthew J. Goldman
        (CA Bar No.: 113330)
        Deputy Attorney General
Attorneys for CALIFORNIA CENTRAL
VALLEY REGIONAL WATER QUALITY
CONTROL BOARD and DEPARTMENT OF
TOXIC SUBSTANCES CONTROL (as
successor-in-interest to State Department of
Health Services)
California Department of Justice
1300 I Street
P.O. Box 944255
Sacramento, CA 94244-2550
Phone: (916) 324-4223
Fax: (916) 327-2319
email: Matthew.Goldman@doj.ca.gov

STIPULATION AND [PROPOSED] ORDER TERMINATING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR PARCEL NO. 072-0231-128
(PORTION) AND 072-0231-129 (PORTION)

4

Civil Action No. CIVS-86-0063-GEB

ORDER

Having considered the foregoing Stipulation, and good cause appearing therefor, **IT IS SO ORDERED**.

Dated:  October 24, 2017

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

STIPULATION AND [PROPOSED] ORDER TERMINATING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR PARCEL NO. 072-0231-128
(PORTION) AND 072-0231-129 (PORTION)

5

Civil Action No. CIVS-86-0063-GEB

EXHIBIT 1

STIPULATION AND [PROPOSED] ORDER TERMINATING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR PARCEL NO. 072-0231-128
(PORTION) AND 072-0231-129 (PORTION)

6

Civil Action No. CIVS-86-0063-GEB

RECORDING REQUESTED BY:

Aerojet Rocketdyne, Inc.
P.O. Box 13222
Sacramento, CA  95813
Attention: Michael P. LaFortune

WHEN RECORDED, MAIL TO:

Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento,  California  95826
Attention:  James Rohrer, P.G.
Brownfields and Environmental
Restoration Program

_____
SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## COVENANT TO RESTRICT USE OF PROPERTY

## ENVIRONMENTAL RESTRICTIONS ON PROPERTY AT A PORTION OF THE PERIMETER GROUNDWATER OPERABLE UNIT

_____
### AEROJET RANCHO CORDOVA SITE, DTSC PROJECT CODE 100002

### *County of Sacramento APN 072-0231-128 (Portion) and 072-0231-129 (Portion)*

This Covenant and Agreement ("Covenant") is made by and among Aerojet Rocketdyne, Inc. (formerly known as Aerojet-General Corporation) (the "Covenantor"), the current owner of property situated in Sacramento County, State of California, described and depicted in Exhibit A, attached hereto and incorporated herein by this reference (the "Property"), the California Department of Toxic Substances Control (the "Department"), and the California Regional Water Quality Control Board, Central Valley Region ("RWQCB").  Pursuant to Civil Code section 1471, the Department and RWQCB have determined that this Covenant is reasonably necessary to protect present or future human health or safety or the environment as a result of the presence in soil and groundwater of hazardous materials as defined in Health and Safety Code section 25260 and waste as defined in Water Code section 13050(d).  The Covenantor, the Department, and RWQCB (collectively referred to as the "Parties"), hereby agree that,

pursuant to Civil Code section 1471, Health and Safety Code section 25355.5, and Water Code section 13304, the use of the Property be restricted as set forth in this Covenant; and the Parties further agree that the Covenant shall conform with the requirements of California Code of Regulations, title 22, section 67391.1.

The Environmental Restrictions of this Covenant shall be for the benefit of, and shall be enforceable by the United States Environmental Protection Agency ("U.S. EPA"), as a third-party beneficiary pursuant to general contract law, including, but not limited to, Civil Code section 1559.

## ARTICLE I
## STATEMENT OF FACTS

1.01.  The Property.  The Property, known as Former Company Store, is described and depicted in Exhibit A, totals approximately 6.96 acres, and is generally described as a portion of Sacramento County Assessor's Parcel No 072-0231- 128 and a portion of Parcel No. 072-0231-129.  The Property is part of the Aerojet Superfund Site ("NPL Site"), which U.S. EPA, pursuant to section 105 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. section 9605, placed on the National Priorities List (the "NPL"), by publication in the Federal Register on September 8, 1983 (40 C.F.R. Part 300).

1.02.  Remediation of the Property.  The Property, along with other land, was investigated by Covenantor under oversight of, and accepted by, U.S. EPA, RWQCB and the Department (collectively, the "Regulatory Agencies") as part of the Perimeter Groundwater Operable Unit (OU 5).  As a result of that investigation, U.S. EPA determined, in its decision document entitled "Interim Record of Decision for Groundwater and Final Record of Decision for Soil for the Perimeter Groundwater Operable Unit (OU-5)" dated February 15, 2011 ("ROD") (which determination was concurred with by RWQCB and the Department) that (i) groundwater remediation be undertaken in accordance with section 2.12.3 of the ROD; and (ii)  as more fully described in the ROD for Former Company Store at section 2.12.4 and Table 2-10, Vapor Mitigation is to be implemented for buildings that are to be constructed in the Area of Vapor Management.

1.03.   Groundwater remediation in the vicinity of the Property is being conducted pursuant to a Statement of Work for Remedial Design and Remedial Action for Groundwater at the Perimeter Groundwater Operable Unit (OU 5) developed in accordance with the Unilateral Administrative Order for the Performance of Remedial Design and Interim Remedial Action for Groundwater (U.S. EPA Docket No. 9-2011-16) and approved by U.S. EPA on or about September 19, 2011 ("Groundwater Remediation").  Chemicals of Concern ("COCs"), including trichloroethylene (TCE), perchlorate and N-Nitrosodimethylamine (NDMA), have been found in the regional groundwater aquifers, including in the vicinity or beneath the Property.  Groundwater is not anticipated to be present within the first 15 feet below ground surface in the vicinity of the Property.  These COCs are hazardous substances as defined in Health and Safety Code section 25316, hazardous materials as defined in Health and Safety Code section 25260, and waste as defined in Water Code section 13050(d).

1.04.  Land Use Covenant.  This land use covenant meets the ROD requirement of imposing institutional controls (found at section 2.12.3 of the ROD as to groundwater and section 2.12.4 as to Former Company Store) and is necessary to restrict activity that may result in unacceptable exposure to groundwater beneath the Property and to soil vapor contamination as to the Area of Vapor Management.  The Regulatory Agencies have concluded that the Property, when used in compliance with the Environmental Restrictions of this Covenant, does not present an unacceptable threat or risk to present and future human health or safety or the environment.

## ARTICLE II

### DEFINITIONS

2.01.  Area of Vapor Management.  "Area of Vapor Management" means the area on the Property to which this Covenant imposes a requirement for Vapor Mitigation pursuant to Article IV, which area is described and depicted in Exhibit B attached hereto and incorporated herein by this reference.

2.02.  Community.  "Community" means the planned development under the Easton/Glenborough Approved Development Plan as described in the Development Agreement dated December 7, 2011 as approved by the Sacramento County Board of Supervisors on December 7, 2011 as Ordinance No. SZC-2011-0029.

2.03. <u>Contracting State Agency</u>. "Contracting State Agency" means either the California Department of Toxic Substances Control or the California Regional Water Quality Control Board Central Valley Region whichever enters into a written agreement with a property owners' association for the purpose of this Covenant.

2.04. <u>Covenantor</u>. "Covenantor" means Aerojet Rocketdyne, Inc. For purposes of clarity, an "Owner" other than Aerojet Rocketdyne, Inc. is not a Covenantor.

2.05. <u>Department</u>. "Department" means the California Department of Toxic Substances Control and includes its successor agencies, if any.

2.06. <u>Environmental Restrictions</u>. "Environmental Restrictions" means all provisions, covenants, restrictions, requirements, prohibitions, and terms and conditions as set forth in any section of this Covenant.

2.07. <u>Groundwater Remediation System</u>. "Groundwater Remediation System" means the groundwater remedial equipment, facilities and systems located on the Property that are designed for the treatment, monitoring, extraction, removal, transport, injection, or recharge of groundwater, including groundwater monitoring and extraction wells and associated infrastructures such as pumping stations and pipelines, and those that may be installed in the future. (Wells and associated pipelines that exist on the Property as of the effective date of this Covenant are depicted in Exhibit C, attached hereto and incorporated herein by this reference.)

2.08. <u>Improvements</u>. "Improvements" includes, but is not limited to: buildings, structures, roads, driveways, improved parking areas, wells, pipelines, or other utilities.

2.09. <u>Lease</u>. "Lease" means lease, rental agreement, or any other document that creates a right to use or occupy any portion of the Property.

2.10. <u>Lot or Parcel</u>. "Lot or Parcel" means, to the extent that the Property is subdivided, an interchangeable term intended to include separately owned lots, parcels, areas or space on land, including common areas. To the extent that the Property is not subdivided, then "Lot or Parcel" means the entirety of the Property.

2.11. <u>Occupant</u>. "Occupant" means Owners and any person or entity who at the time is entitled by ownership, leasehold, or other legal relationship to the right to occupy any portion of the Property.

2.12. <u>Owner</u>. "Owner" means the Covenantor, its successors in interest, and

their successors in interest, including heirs and assigns, who at the time has a record fee interest in any portion of the Property.

2.13.  <u>POA</u>.  "POA" means a property owners' association (including a homeowners' association) established and incorporated pursuant to applicable law.

2.14.  <u>Regulatory Agencies</u>.  "Regulatory Agencies" means the Department, RWQCB, and U.S. EPA.

2.15.  <u>RWQCB</u>.  "RWQCB" means the California Regional Water Quality Control Board, Central Valley Region, and includes its successor agencies, if any.

2.16.  <u>U.S. EPA</u>.  "U.S. EPA" means the United States Environmental Protection Agency, and includes its successor agencies, if any.

2.17  <u>Vapor Mitigation</u>.  "Vapor Mitigation" means a constructed feature or features for buildings to prevent exposure to concentrations of VOC contamination that may be present in soil vapor that require Vapor Mitigation in accordance with section 4.02 and applicable regulatory agency guidance and standards.

## ARTICLE III
<u>GENERAL PROVISIONS</u>

3.01.  <u>Runs with the Land</u>.  This Covenant sets forth Environmental Restrictions that apply to and encumber the Property and every portion thereof no matter how it is improved, held, used, occupied, leased, sold, hypothecated, encumbered, or conveyed. This Covenant:  (a) runs with the land pursuant to Health and Safety Code section 25355.5 and Civil Code section 1471; (b) inures to the benefit of and passes with each and every portion of the Property; (c) is for the benefit of, and is enforceable by the Regulatory Agencies; and (d) is imposed upon the entire Property unless expressly stated as applicable only to a specific portion thereof.

3.02.  <u>Binding upon Owners/Occupants</u>.  Pursuant to the Health and Safety Code, this Covenant binds all Owners and Occupants of the Property, their heirs, successors, assignees, agents, and employees.  Pursuant to Civil Code section 1471, all successive owners of the Property are expressly bound hereby for the benefit of the Regulatory Agencies.  It is intended that this Covenant is binding on all Owners and Occupants, and their respective successors and assigns, only during and in respect of their respective successive periods of ownership or occupancy such that an Owner's or

Occupant's rights and obligations under this Covenant shall terminate upon transfer, expiration, or termination of the Owner's or Occupant's interest in the Property, except that such Owner's or Occupant's liability for any violations of the requirements or restrictions of this Covenant or any acts or omissions during such ownership or occupancy shall survive any transfer, expiration or termination of the Owner's or Occupant's interest in the Property.

3.03. <u>Incorporation into Deeds and Leases</u>. This Covenant and its Environmental Restrictions shall be incorporated by reference in each and every deed and Lease for any portion of the Property.

3.04. <u>Conveyance of Property</u>.

(a) The Owner shall provide Notice to the Department and RWQCB not later than thirty (30) calendar days after any conveyance or receipt by such Owner of any ownership interest in a Lot or Parcel within the Property (excluding Leases, and mortgages, liens, and other non-possessory encumbrances). The Notice shall include the name and mailing address of such Owner of such Lot or Parcel and shall reference the site name ("Aerojet Rancho Cordova Site"), the site code ("DTSC Project Code 100002"), and the Assessor's Parcel Number(s) ("APN") as listed on page one of this Covenant. If such Lot or Parcel has been assigned a different APN from that listed on page one of this Covenant or previously associated with the Lot or Parcel, each such APN that covers such Lot or Parcel must be provided in the Notice.

(b) The obligation of the Owner under subsection (a) above shall be performed by a POA if and when all of the following conditions are met:

(i) The POA has demonstrated to the Department's and RWQCB's satisfaction that it has been established and incorporated pursuant to applicable law, and it has obtained all necessary forms of authorization to undertake the obligations under this subsection (b) specified for the POA,

(ii)    The POA enters into a written agreement with the Department or RWQCB ("Contracting State Agency") whereby the POA agrees to provide and thereafter provides to the Contracting State Agency an electronic summary, tabulation, or report ("Section 3.04 POA Notice") quarterly (and within thirty (30) days of a request by the Contracting State Agency), containing the then-current property ownership information for all Lots or Parcels within the Property. Such Section 3.04 POA Notice shall include the names and mailing addresses of the then-current Owners and the applicable APN for each such Lot or Parcel within the Property. Such 3.04 POA Notice shall reference the site name and site code as listed on page one of this Covenant and shall include the APN(s) on page one of the Section 3.04 POA Notice. Such 3.04 POA Notice shall be in lieu of the Owner's Notice under 3.04(a).

(iii)    The POA establishes and maintains financial assurance for the benefit of all Owners and to ensure that funds are available for the purpose of the POA complying with this subsection (b). The POA shall establish and maintain a financial assurance mechanism for an amount that includes the estimated costs of performing the obligations of this subsection (b) for three (3) consecutive years. The cost estimates proposed by the POA are subject to the approval of the Contracting State Agency and shall be updated on an annual basis unless the Contracting State Agency indicates otherwise in writing. The financial assurance mechanism(s) shall include letters of credit or surety or performance bonds. The financial assurance mechanism shall include provisions that allow any Owner, on behalf of all Owners of the Property, to cause the funds to be

used for the retention of a consultant or consultants to perform the activities required of the Owner under subsection (c) below upon Notice to the Owner by the Contracting State Agency as provided in subsection (c) below that the POA has failed to comply with the requirements of this subsection (b).

(iv)    The POA agrees in writing to reimburse the Department and RWQCB for their costs incurred in negotiating and preparing the agreement required in subsection (b)(ii) above regardless of whether such agreement is entered into by the POA and the Contracting State Agency, and the costs incurred by the Contracting State Agency in its review of proposed financial assurance cost estimates and updated financial assurance cost estimates as required under subsection (b)(iii).

(c)    The Contracting State Agency shall give the POA forty-five (45) days' Notice to cure the POA's failure to comply with the requirements of subsection (b) before the Contracting State Agency gives Notice to the Owner of the POA's failure.  The Owner's obligation under subsection (a) above shall resume within ninety (90) days after Notice is provided to the Owner by the Contracting State Agency that the POA has failed to comply with the requirements of subsection (b), unless the POA resumes performance of its obligations under subsection (b) within the same 90-day time period as the Owner is given under that subsection (or as extended in writing by the Contracting State Agency).  The Owner's obligation under subsection (a) above shall continue until the POA resumes performance of its obligations under subsection (b).

(d)    The Regulatory Agencies shall not, by reason of this Covenant, have authority to approve, disapprove, or otherwise affect a

proposed conveyance, except as otherwise provided by law.

3.05. <u>Costs of Administering the Covenant</u>.

(a)     The Department and RWQCB have already incurred and will in the future incur costs associated with this Covenant. Therefore, the Covenantor hereby covenants for the Covenantor and for all subsequent Owners that, pursuant to California Code of Regulations, title 22, section 67391.1(h), and Water Code section 13304, the Owner of each Lot or Parcel agrees to pay the Regulatory Agencies' costs incurred in administering, implementing and enforcing this Covenant as to such Lot or Parcel.

(b)     The obligation of the Owner under subsection (a) above shall be performed by a POA if and when all of the following conditions are met:

(i)     The POA has demonstrated to the Department's or RWQCB's satisfaction that it has been established and incorporated pursuant to applicable law, and it has obtained all necessary forms of authorization to undertake the obligations under this subsection (b) specified for the POA.

(ii)     The POA enters into a written agreement with the Contracting State Agency whereby the POA agrees to pay and thereafter pays the Regulatory Agencies their costs in administering, implementing and enforcing this Covenant except that the Owner shall be liable for costs incurred by the Regulatory Agencies (A) in response to the Owner's or Occupant's violations or non-compliance with this Covenant; (B) for making a determination to grant a variance or terminate all or part of this Covenant with respect to that Owner's or Occupant's Lot or Parcel within the Property; or (C) as part of a request to provide approval of any Vapor Management Plan or any other action under the terms of this Covenant.

(iii)    The POA establishes and maintains financial assurance for the benefit of all Owners and to ensure that funds are available for the purpose of the POA complying with this subsection (b).  The POA shall establish and maintain a financial assurance mechanism for an amount that includes the estimated costs of performing the obligations of this subsection (b) for three (3) consecutive years.  The cost estimates proposed by the POA are subject to the approval of the Contracting State Agency and shall be updated on an annual basis unless the Contracting State Agency indicates otherwise in writing.  The financial assurance mechanism(s) shall include letters of credit or surety or performance bonds.  The financial assurance mechanism shall include provisions that allow any Owner, on behalf of all Owners of the Property, to cause the funds to be used for the retention of a consultant or consultants to perform the activities required of the Owner under subsection (c) below upon Notice to the Owner by the Contracting State Agency as provided in subsection (c) below that the POA has failed to comply with the requirements of this subsection (b).

(iv)    The POA agrees in writing to reimburse the Department and RWQCB for their costs incurred in negotiating and preparing the agreement required in subsection (b)(ii) above regardless of whether such agreement is entered into by the POA and the Contracting State Agency, and the costs incurred by the Contracting State Agency in its review of proposed financial assurance cost estimates and updated financial assurance cost estimates as required under subsection (b)(iii).

(c)    The Contracting State Agency shall give the POA forty-five (45)

days' Notice to cure the POA's failure to comply with the requirements of subsection (b) before the Contracting State Agency gives Notice to the Owner of the POA's failure.  The Owner's obligation under subsection (a) above shall resume within ninety (90) days after Notice is provided to the Owner by the Contracting State Agency that the POA has failed to comply with the requirements of subsection (b), unless the POA resumes performance of its obligations under subsection (b) within the same 90-day time period as the Owner is given under that subsection (or as extended in writing by the Contracting State Agency).  The Owner's obligation under subsection (a) above shall continue until the POA resumes performance of its obligations under subsection (b).

**ARTICLE IV**

RESTRICTIONS AND REQUIREMENTS

4.01.  Prohibited Activities Relating to Groundwater.  No Owner or Occupant shall conduct any activities at the Property that may interfere with the integrity or effectiveness of the Groundwater Remediation System, and the related monitoring, operation and maintenance activities, required for the groundwater beneath the Property, including any of the following activities:

(a) No Extraction.  No Owner or Occupant shall drill, bore, otherwise construct, or use a well for the purpose of extracting water for any use, including, but not limited to, domestic, municipal, potable, irrigation or industrial uses, except (i) for Regulatory-Agency-approved site remediation; or (ii) unless and until expressly approved in writing by RWQCB.  No Owner or Occupant shall conduct sustained extraction of groundwater encountered during excavations for the construction of buildings or other improvements unless and until expressly permitted in writing by RWQCB.

(b) No Recharge.  No Owner or Occupant shall install, operate, or

maintain a recharge or sedimentation control basin that is designed to infiltrate water unless and until expressly approved in writing by RWQCB.

(c) <u>No Injection</u>.  No Owner or Occupant shall install, operate, or maintain any injection well for any use unless and until expressly approved in writing by RWQCB.

(d) Upon RWQCB's approval as to section 4.01(a) (b) or (c), Owner or Occupant shall obtain all necessary permits to install, operate, or maintain such facilities.

4.02. <u>Prohibitions Related to Vapor Mitigation</u>.

(a) No Owner or Occupant shall construct any building on any portion of the Property within the Area of Vapor Management without Vapor Mitigation designed by a licensed engineer and approved by the Department, in accordance with applicable regulatory agency guidance and standards. Such Vapor Mitigation shall be maintained by the Owner and shall, at a minimum require, unless otherwise approved by the Department in writing, (i) poured concrete slabs constructed in compliance with applicable building codes for all buildings (unless a different type of foundation providing equivalent protection is expressly required or permitted by then current regulatory agency guidance and standards), (ii) a vapor barrier to affect Vapor Mitigation, (iii) a passive sub-slab depressurization system that can be converted to an active system if necessary and (iv) verification upon completion of construction that the Vapor Mitigation is constructed properly and functioning.  The Department shall make every effort to give Notice of approval within 45 days of receipt of the application (with necessary design and construction details).

(b) No activities shall be conducted at the Property that interfere with the integrity or effectiveness of Vapor Mitigation, including any associated vapor monitoring wells.

(c)    For purposes of this Section 4.02, the term "building" does not include roofed structures without walls or structures that are not for human habitation and this section shall not apply to the construction of such structures.

4.03.  <u>Access for the Regulatory Agencies</u>.  The Regulatory Agencies shall have reasonable right of entry and access to the Property for inspection, monitoring, and other activities consistent with the purposes of this Covenant as deemed necessary by the Regulatory Agencies to protect the public health or safety, or the environment.  The Regulatory Agencies shall take reasonable efforts to limit such entry and access to common areas such as public rights-of-way or private roads in the Community.

4.04.  <u>Access for Implementing Actions</u>.  The entity or person responsible for implementing activities under a Regulatory Agency-approved plan for any action to be taken on the Property shall have reasonable right of entry and access to the Property for the purpose of implementing those activities until the Regulatory Agencies determine that those activities are not required.  Any such responsible person or entity shall take reasonable efforts to limit such entry and access to common areas such as public rights-of-way or private roads in the Community.

4.05.  <u>Location of Groundwater Remediation System</u>.  The Property is located within the Community.  Should Groundwater Remediation System components need to be placed in the vicinity of the Property after the recordation of this Covenant, the following prioritization applies as to the location of any such components:

(a)    To the extent that alternate locations are appropriate and protective as determined by the Regulatory Agencies, such components will be located within the arterial roadway corridors of the Community.

(b)    To the extent that Groundwater Remediation components need to be placed in a subdivision within the Community and alternative locations are appropriate and protective as determined by the Regulatory Agencies, the components will be located in public right-of-ways (including public utility easement areas) or on nonresidential lots.  For example, when the alternatives allow for

placement of a well and electrical equipment adjacent to a residential lot or adjacent to a public property (*e.g.*, park, open space, or other common area property), the location of the facilities would be on or adjacent to the public property.

4.06. <u>Inspection and Reporting Requirements</u>.

(a)     The Owner of each Lot or Parcel within the Property shall conduct an annual inspection of said Lot or Parcel verifying compliance with this Covenant and shall submit an annual inspection report to the Department and RWQCB for their approval by February 15th of each year.  The annual inspection report must include the dates, times, and names of those who conducted the inspection and reviewed the annual inspection report.  It also shall describe how the observations were performed that were the basis for the statements and conclusions in the annual inspection report (*e.g.*, drive by, fly over, walk in, etc.).  If any violation is noted, the annual inspection report must detail the steps taken to correct the violation and return to compliance with this Covenant.  It is anticipated that the inspection report will be in a checklist format in material conformance with Exhibit D hereto.  If the Owner identifies any violations of this Covenant during the annual inspection or at any other time, the Owner must within ten (10) calendar days of identifying the violation:  (i) determine the identity of the party in violation; (ii) send a letter advising the party of the violation of the Covenant; and (iii) demand that the violation cease immediately.  Additionally, a copy of any correspondence related to the violation of this Covenant shall be sent to the Department and RWQCB within ten (10) calendar days of its original transmission.

(b)     The obligation of the Owner under subsection (a) above shall be performed by a POA  if and when all of the following conditions are met:

(i)     The POA has demonstrated to the Department's or RWQCB's satisfaction that it has been established and incorporated pursuant to applicable law, and it has obtained all necessary forms of authorization to undertake the obligations under this subsection (b) specified for the POA.

(ii)    The POA enters into a written agreement with the Contracting State Agency whereby the POA agrees to undertake and thereafter undertakes all of the following actions:

> A.     Annual Inspection and Report.  An inspection of the Property verifying compliance with this Covenant shall be performed annually.  A written annual inspection shall be submitted to the Contracting State Agency for its approval by February 15th of each year, with a copy to the Department or RWQCB which is not the Contracting State Agency.  The inspection report must include the following information:  (i) dates, times, and names of those who conducted the inspection and reviewed the inspection report for submittal to the Contracting State Agency; (ii) a description of how the observations were performed that were the basis for the statements and conclusions in the inspection report (*e.g.*, drive by, fly over, walk in, etc.); and (iii) if any violation is noted, a description in detail of the steps taken or to be taken to return the Property to compliance.  It is anticipated that the inspection report will be in a checklist format in material conformance with Exhibit D hereto.

> B.     Discovery of Violation.  If a violation of this Covenant is discovered during an annual inspection or at any other time by the POA as to any portion of

the Property for which it has the obligation to inspect under this Covenant or by the Owner at any time as to that Owner's Lot or Parcel, the violation must be reported in writing to the Contracting State Agency ("Violation Notice") as described in (C) below, with a copy to the Department or RWQCB which is not the Contracting State Agency.

C.    <u>Letter to Party in Violation</u>.  If the POA discovers a violation of this Covenant that has not yet been reported, within ten (10) calendar days of discovering the violation the POA shall determine the identity of the party in violation; and send to the party in violation a letter advising the party of the violation of the Covenant and demand that the violation cease immediately ("Violation Letter").  The POA shall send to the Contracting State Agency, with a copy to the Department or RWQCB which is not the Contracting State Agency, a copy of the Violation Letter along with the Violation Notice.  If the Owner discovers the violation as to a Lot or Parcel it owns, the Owner shall send the Violation Notice within ten (10) calendar days of discovery of the violation to the Department, RWQCB, and the POA.

(iii)    The POA establishes and maintains financial assurance for the benefit of all Owners and to ensure that funds are available for the purpose of the POA complying with this subsection (b).  The POA shall establish and maintain a financial assurance mechanism for an amount that includes the estimated costs of performing the obligations of this subsection (b) for three (3) consecutive years.  The cost estimates proposed by the POA are subject to the approval

of the Contracting State Agency and shall be updated on an annual basis unless the Contracting State Agency indicates otherwise in writing.  The financial assurance mechanism(s) shall include letters of credit or surety or performance bonds. The financial assurance mechanism shall include provisions that allow any Owner, on behalf of all Owners of the Property, to cause the funds to be used for the retention of a consultant or consultants to perform the activities required of the Owner under subsection (c) below upon Notice to the Owner by the Contracting State Agency as provided in subsection (c) below that the POA has failed to comply with the requirements of this subsection (b).

(iv)     The POA agrees in writing to reimburse the Department and RWQCB for their costs incurred in negotiating and preparing the agreement required in subsection (b)(ii) above regardless of whether such agreement is entered into by the POA and the Contracting State Agency, and the costs incurred by the Contracting State Agency in its review of proposed financial assurance cost estimates and updated financial assurance cost estimates as required under subsection (b)(iii).

(c)     The Contracting State Agency shall give the POA forty-five (45) days' Notice to cure the POA's failure to comply with the requirements of subsection (b) before the Contracting State Agency gives Notice to the Owner of the POA's failure.  The Owner's obligation under subsection (a) above shall resume within ninety (90) days after Notice is provided to the Owner by the Contracting State Agency that the POA has failed to comply with the requirements of subsection (b), unless the POA resumes performance of its obligations under subsection (b) within the same 90-day time period as the Owner is given under that

subsection (or as extended in writing by the Contracting State Agency).  The Owner's obligation under subsection (a) above shall continue until the POA resumes performance of its obligations under subsection (b).

## ARTICLE V
<u>ENFORCEMENT</u>

5.01.  <u>Enforcement</u>.  Failure of any Owner or Occupant to comply with this Covenant as to any Lot or Parcel which is part of the Property for which it is an Owner or Occupant shall be grounds for the Department or RWQCB to require modification or removal of any Improvements constructed or placed upon any portion of the Property in violation of this Covenant.  Violation of this Covenant shall be grounds for the Department or RWQCB to pursue administrative, civil or criminal actions against such Owner or Occupant of such Lot or Parcel as the Department or RWQCB deems appropriate.

5.02.  <u>Enforcement Rights of U.S. EPA as a Third-Party Beneficiary</u>.  U.S. EPA, as a third-party beneficiary, has the right to enforce the Environmental Restrictions of this Covenant.

5.03.  <u>U.S. EPA's CERCLA Authority</u>.  Nothing in this Covenant shall limit or otherwise affect U.S. EPA's right of entry and access, or U.S. EPA's authority to take response actions, under CERCLA; the National Contingency Plan, 40 Code of Federal Regulations, Part 300, and its successor provisions; or federal law.

5.04.  <u>Supersedes Restrictions in Order re Partial Consent Decree</u>.  This Covenant, upon recordation and pursuant to court order, supersedes as to the Property the restrictions contained in Order re Partial Consent Decree recorded in the Official Records of Sacramento County, California, July 20, 1989, Book 890720, Page 1004 (the "1989 Partial Consent Decree Order"), which shall have no continuing force or effect as to the Property.  The Plaintiffs (as that term is used in the 1989 Partial Consent Decree Order) and Covenantor have so stipulated pursuant to Paragraph 11(L) of the Partial Consent Decree and a copy of such Stipulation and Court Order so providing is being recorded concurrently in the Official Records of Sacramento County, California.

**ARTICLE VI**

VARIANCE, REMOVAL, AND TERM

6.01.  Variance.  Any person may apply to the Department or RWQCB for a written variance from any of the Environmental Restrictions of this Covenant.  If the application is submitted to the Department, such application shall be made in accordance with Health and Safety Code section 25223.  The Department and RWQCB shall consult with each other prior to making the decision on the variance and shall ensure that each of their decisions are consistent with any enforcement orders or permits issued by the other regarding the Property.  A copy of the application shall be submitted to U.S. EPA and Covenantor simultaneously when it is submitted to the Department or RWQCB.  No variance may be granted under this paragraph without prior Notice to and an opportunity to comment by U.S. EPA and Covenantor.

6.02  Removal of Environmental Restrictions.  Any person may apply to the Department or RWQCB to remove any of the Environmental Restrictions of this Covenant as it applies to all or any portion of the Property.  If the application is submitted to the Department, such application shall be made in accordance with Health and Safety Code section 25224.  The Department and RWQCB shall consult with each other prior to making the decision on the termination or modification and shall ensure that each of their decisions are consistent with any enforcement orders or permits issued by the other regarding the Property.  A copy of the application shall be submitted to U.S. EPA and Covenantor simultaneously when it is submitted to the Department or RWQCB.  No removal may be granted under this paragraph without prior Notice to and an opportunity to comment by U.S. EPA and Covenantor.

6.03  Term.  Unless ended in accordance with section 6.02, by law, or by both the Department and RWQCB in the exercise of their respective discretion, and after providing Notice to and an opportunity to comment by U.S. EPA and Covenantor, this Covenant shall continue in effect in perpetuity.

**ARTICLE VII**

MISCELLANEOUS

7.01.  No Dedication or Taking Intended.  Nothing set forth in this Covenant shall be construed to be a gift or dedication, or offer of a gift or dedication, of the Property, or

any portion thereof to the general public or anyone else for any purpose whatsoever. Nothing in this Covenant shall be construed to effect a taking under state or federal law.

7.02. <u>References to Regulatory Agencies</u>. All references to the Regulatory Agencies, Contracting State Agency, the Department, RWQCB or U.S. EPA include successor agencies, departments or other successor entities of the Regulatory Agencies, Contracting State Agency, the Department, RWQCB or U.S. EPA.

7.03. <u>Recordation</u>. The Covenantor shall record this Covenant, with all referenced Exhibits, in the County of Sacramento within fourteen (14) calendar days of the Covenantor's receipt of a fully executed original.

7.04. <u>Notices</u>. Whenever any person gives or serves any Notice ("Notice" as used herein includes any demand or other communication with respect to this Covenant), each such Notice shall be in writing, addressed to the party to be served at the address(es) set forth below, or at such other address for which that party may have given notice under the provisions of this section, and shall be deemed effective: (i) when delivered, if personally delivered to the person being served (or, for delivery to an entity, to the person designated for such entity in the address(es) provided below or, if none, to an officer of a corporate party, a manager or officer of a limited liability company, or a partner of a partnership (as applicable) being served); or (ii) five (5) calendar days after deposit in the mail, if mailed by United States mail, postage paid, certified, return receipt requested:

|  |  |
|---|---|
| To Covenantor: | Aerojet Rocketdyne, Inc.<br>P.O. Box 13222<br>Sacramento, CA 95813<br>Attn: Legal Department |
| To Owner: | Name and address of any new owner as identified to the Department under Section 3.04 of this Covenant. |
| To POA: | Name and address of any POA which has entered into an agreement with the Department or RWQCB as provided in this Covenant |
| To Department: | Branch Chief<br>Brownfields and Environmental Restoration Program<br>Department of Toxic Substances Control<br>8800 Cal Center Drive, 3rd Floor |

Sacramento, CA  95826-3200

|         |                                                    |
|---------|----------------------------------------------------|
| To RWQCB: | Executive Officer                                |
|         | California Regional Water Quality Control Board    |
|         | Central Valley Region                              |
|         | 11020 Sun Center Drive, #200                       |
|         | Rancho Cordova, CA  95670-6114                     |

|           |                                                    |
|-----------|----------------------------------------------------|
| To U.S. EPA | U.S. Environmental Protection Agency             |
|           | Region IX                                          |
|           | Attention:  Remedial Project Manager Daewon Rojas-Mickelson |
|           | 75 Hawthorne Street                                |
|           | San Francisco, CA  94105-3901                      |

Any party may change its address or the individual to whose attention a Notice is to be sent by giving written Notice in compliance with this paragraph.

7.05.   Partial Invalidity.  If this Covenant or any of its terms are determined by a court of competent jurisdiction to be invalid for any reason, the surviving portions of this Covenant shall remain in full force and effect as if such portion found invalid had not been included herein.

7.06   Statutory and Regulatory References.  All statutory and regulatory references include successor provisions.

7.07.  Counterparts.  The Parties may execute this Covenant in two (2) or more counterparts, which shall, in the aggregate, be signed by all Parties; each counterpart shall be deemed an original of this Covenant as against any Party who has signed it.  In the event of any disparity between counterparts produced, the counterpart recorded in the County Recorder's Official Records shall be controlling.

IN WITNESS WHEREOF, the Parties execute this Covenant.

Covenantor:    Aerojet Rocketdyne, Inc.


By: _____

Print Name and Title: _____

Date: _____



California Department of Toxic Substances Control


By: _____

Print Name and Title: _____

Date: _____



California Regional Water Quality Control Board, Central Valley Region


By: _____

Print Name and Title: _____

Date: _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this

State of California

County of _____

On _____ before me,

_____

*(space above this line is for name and title of the officer/notary)*,

personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

_____ (seal)
Signature of Notary Public

A notary public or other officer completing this certificate verifies only

the identity of the individual who signed the document to which this

State of California

County of _____

On _____ before me,

_____
*(space above this line is for name and title of the officer/notary)*,

personally appeared _____, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal,


_____ (seal)
Signature of Notary Public

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this

State of California

County of _____

On _____ before me,

_____

*(space above this line is for name and title of the officer/notary)*,

personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,


_____ (seal)
Signature of Notary Public

Exhibit A

Map and property description as referenced in Section 1.01

27777.REM
8/12/2016
VLB

### EXHIBIT "A"
### DESCRIPTION OF
### PERIMETER GROUNDWATER OPERABLE UNIT
### SITE FCS

All that real property situated in the County of Sacramento, State of California, being a portion of projected Section 16, Township 9 North, Range 7 East, Mount Diablo Meridian, also being a portion of Area U, as shown and so designated on that certain Record of Survey entitled "Record of Survey Aerojet-General Corporation Property" filed for record on July 10, 2008 in Book 76 of Surveys, at Page 1, Sacramento County Records, also being a portion of The Lands of Aerojet Rocketdyne, Inc., an Ohio corporation, being a portion of New Resultant Parcel 9, as described in that certain Grant Deed recorded on August 12, 2014 in Book 20140812, at Page 0634, Official Records of Sacramento County and being more particularly described as follows:

**Beginning** at the southeast corner of Area 9, as shown and so designated on said Record of Survey, also being a point on the boundary line of said Area U; thence from said **POINT OF BEGINNING** coincident with the northerly boundary line of said Area U, the following four courses and distances:

  1. North 26°06'33" West a distance of 554.09 feet;
  2. North 62°09'07" East a distance of 511.33 feet;
  3. South 27°52'15" East a distance of 148.42 feet to a found 5/8 inch rebar with a plastic cap stamped "LS 6046" and
  4. South 34°20'30" East a distance of 428.85 feet a found 5/8 inch rebar with a plastic cap stamped "LS 6046";

thence leaving said northerly boundary line of Area U, South 64°12'22" West a distance of 577.07 feet to the Point of Beginning. Said area containing 6.96 acres of land, more or less. Portion of APN: 072-0231-128

*See Exhibit "A-1" plat to accompany description, attached hereto and made a part hereof.*

This legal description was prepared by me or under my supervision pursuant to Section 8729 (2) of the Professional Land Surveyors Act.

Craig E. Spiess, PLS 7944
License Expiration Date: 12-31-17
Date: 8/12/16

Description prepared by:
**MACKAY & SOMPS CIVIL ENGINEERS, INC.**
1552 Eureka Road, Suite 100, Roseville, CA 95661
P:\27777\survey-MS\mapping\desc\PGOU SITES\PGOU_FCS.doc

Exhibit A (continued)

Map and property description as referenced in Section 1.01



27777.REM
8/12/2016
VLB

## EXHIBIT "A"
### DESCRIPTION OF
### PERIMETER GROUNDWATER OPERABLE UNIT
### SITE FCS

All that real property situated in the County of Sacramento, State of California, being a portion of projected Section 16, Township 9 North, Range 7 East, Mount Diablo Meridian, also being a portion of Area U, as shown and so designated on that certain Record of Survey entitled "Record of Survey Aerojet-General Corporation Property" filed for record on July 10, 2008 in Book 76 of Surveys, at Page 1, Sacramento County Records, also being a portion of The Lands of Aerojet Rocketdyne, Inc., an Ohio corporation, being a portion of New Resultant Parcel 9, as described in that certain Grant Deed recorded on August 12, 2014 in Book 20140812, at Page 0634, Official Records of Sacramento County and being more particularly described as follows:

**Beginning** at the southeast corner of Area 9, as shown and so designated on said Record of Survey, also being a point on the boundary line of said Area U; thence from said **POINT OF BEGINNING** coincident with the northerly boundary line of said Area U, the following four courses and distances:

    1. North 26°06'33" West a distance of 554.09 feet;
    2. North 62°09'07" East a distance of 511.33 feet;
    3. South 27°52'15" East a distance of 148.42 feet to a found 5/8 inch rebar with a plastic cap stamped "LS 6046" and
    4. South 34°20'30" East a distance of 428.85 feet a found 5/8 inch rebar with a plastic cap stamped "LS 6046";

thence leaving said northerly boundary line of Area U, South 64°12'22" West a distance of 577.07 feet to the Point of Beginning. Said area containing 6.96 acres of land, more or less. Portion of APN: 072-0231-128

*See Exhibit "A-1" plat to accompany description, attached hereto and made a part hereof.*

This legal description was prepared by me or under my supervision pursuant to Section 8729 (2) of the Professional Land Surveyors Act.

Craig E. Spiess, PLS 7944
License Expiration Date: 12-31-17
Date: 8/12/16

Description prepared by:
**MACKAY & SOMPS CIVIL ENGINEERS, INC.**
1552 Eureka Road, Suite 100, Roseville, CA 95661
P:\27777\survey-MS\mapping\desc\PGOU SITES\PGOU_FCS.doc

Page 1 of 2



Exhibit C

Groundwater Remediation System (As referenced in Section 2.05)



Exhibit D

Annual Land Use Covenant Inspection Report

Site Name: Aerojet Rocketdyne, Inc. PGOU Site Former Company Store
Site address: Sacramento County (See Exhibits A and B on attached Land Use Covenant)
Assessors Parcel Numbers: APN 072-0231-128 (Portion) and 072-231-129 (Portion)
DTSC Project Code: 100002
Envirostor Project Code (if any):
Inspection date:
Time:
(List all persons present during the inspection below)

| Name: | Title: | Employer: |
|---|---|---|
| Address: | Phone: | E-mail: |
| Name: | Title: | Employer: |
| Address: | Phone: | E-mail: |
| Name: | Title: | Employer: |
| Address: | Phone: | E-mail: |

**Brief Description of the uses, activities and conditions at the Site:**
The site is undeveloped with an APN of 072-0231-128 and 072-0231-129.  It is currently owned by ---.

Annual inspection of property conducted by
- o  Walk in
- o  Drive By
- o  Fly over
- o  Other: _____

**1)** **Prohibited Activities Relating to Groundwater (See LUC Section 4.01)**

    a) No activities that interfere with the integrity or effectiveness of the groundwater remediation system and related monitoring, operation and maintenance activities were found on the Property since the time of the recorded Covenant to Restrict Use of Property or the last annual inspection report, whichever is later.

    Violation: Yes _____ No _____

    Nature and Extent of Violation:

    _____
    _____.

    b) No drilling, boring, constructing or use of well(s) for the purpose of extracting water for any use including domestic, municipal, potable, irrigation or industrial uses except for Regulatory-Agency-approved site remediation or unless expressly approved in writing by the RWQCB were found on the Property, since the time of the recorded Covenant to Restrict Use of Property or the last annual inspection report, whichever is later.

    Violation: Yes _____ No _____

    Nature and Extent of Violation:

    _____
    _____

    If prior express written approval of RWQCB required by section 4.01(a) was obtained, state the date, scope and nature of such approval:

    _____
    _____.

    c) No sustained extraction of groundwater encountered during excavations for the construction of buildings or other improvements unless expressly permitted in writing by the RWQCB, were found on the property since the time of the recorded Covenant to Restrict Use of Property or the last annual inspection report, whichever is later

    Violation: Yes _____ No _____

    Nature and Extent of Violation:

    _____
    _____

    If prior express written approval of RWQCB required by section 4.01(a) was obtained, state the date, scope and nature of such approval:

    _____
    _____.

d) No installing, operating or maintaining a recharge or sedimentation control basin designed to infiltrate water were found on the Property unless expressly approved in writing by the RWQCB, since the time of the recorded Covenant to Restrict Use of Property or the last annual inspection report, whichever is later.

Violation:     Yes _____     No ___ ___

Nature and Extent of Violation:
_____
_____.

If prior express written approval of RWQCB required by section 4.01(b) was obtained, state the date, scope and nature of such approval:
_____
_____.

e) No activities related to the installing, operating, or maintaining an injection well were found on the Property unless expressly approved in writing by the RWQCB since the time of the recorded Covenant to Restrict Use of Property or the last annual inspection report, whichever is later.

Violation:     Yes _____     No _____

Nature and Extent of Violation:
_____
_____.

If prior express written approval of RWQCB required by section 4.01(c) was obtained, state the date, scope and nature of such approval:
_____
_____.

**2)     Prohibited Activities Relating to Vapor Mitigation (See LUC Section 4.02)**

a) No building been constructed on any portion of the Property within the Area of Vapor Management without vapor mitigation, designed by a licensed engineer and approved by the Department of Toxic Substances Control.

Violation:     Yes _____     No _____

Nature and Extent of Violation:
_____
_____.

b) No activities have been conducted at the Property that interfere with the integrity or effectiveness of Vapor Mitigation, including any associated vapor monitoring wells.

# Annual Land Use Covenant Inspection Report

Violation: Yes _____        No _____

Nature and Extent of Violation:

_____

_____.

Provide additional descriptions of any indication that maintenance, repair, or modification is needed, or of any violations of the LUC restrictions or requirements.  Please include photographs which depict the situation as described, and attach copies of any notifications made, any inspections notes, drawings, record of verbal warnings, and other relevant documents to the extent applicable.

_____

_____

_____

_____

_____

**Are there photographs attached to this report which illustrate the current Site conditions?  _____ No;    _____ Yes, the number of photographs _____**

**This annual report is submitted under penalty of perjury by the current owner(s), or their duly authorized agent.  This report includes the findings of the annual inspection. During the inspection it was determined that (check one):**

_____    The Property is being used in a manner consistent with the terms of this LUC;

_____    Conditions at the Property were not in compliance with the LUC; and the required notification(s) and corrective action were implemented and as a result, the conditions are in compliance with the LUC; or

_____    Conditions at the Property were not in compliance with the LUC; the required notification(s) and corrective action are being implemented; and once the conditions are corrected, a subsequent report will be submitted within 30 days of the date of this inspection report to document the return to compliance.


_____          _____
 Signature of Inspector                                            Date

_____          _____
Print Name                                                            Title

_____          _____
Company                                                              Address, City, State, Zip

_____
Contact Telephone Number(s)

# PHOTO LOG

# Former Company Store LUC