1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wendy Feng (Bar No. 200813)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA  94105-2533
Telephone:    + 1 (415) 591-6000
Facsimile:    + 1 (415) 591-6091
Email:  wfeng@cov.com

Attorneys for Defendants
AEROJET ROCKETDYNE, INC. and
CORDOVA CHEMICAL COMPANY

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>AEROJET-GENERAL CORPORATION and CORDOVA CHEMICAL COMPANY<br><br>Defendants. | Civil Action No.:<br><br>2:86-cv-00063-GEB |
| PEOPLE OF THE STATE OF CALIFORNIA, ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>AEROJET-GENERAL CORPORATION and CORDOVA CHEMICAL COMPANY<br><br>Defendants. | **STIPULATION AND [PROPOSED] ORDER REMOVING PARTIAL CONSENT DECREE PROVISIONS FOR LAND RESTRICTIONS FOR ASSESSOR'S PARCEL NO. 072-0231-125, ALSO KNOWN AS AREA 49000** |

WHEREAS, this Court entered a Partial Consent Decree on June 23, 1989 by and

among Plaintiffs, on the one hand, and Defendants Aerojet Rocketdyne, Inc.

STIPULATION AND [PROPOSED] ORDER REMOVING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR ASSESSOR'S PARCEL NO. 072-0231-
125, ALSO KNOWN AS AREA 49000

Civil Action No. 2:86-cv-00063-GEB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(formerly called Aerojet-General Corporation) and Cordova Chemical Company (together, for reference purposes, "Aerojet"), on the other hand;

WHEREAS, Paragraph 11 of the Partial Consent Decree provides for restrictions on the use and transfer of lands which are part of the subject Aerojet Rancho Cordova Superfund Site ("Site"), and requires that Aerojet record an Order re Partial Consent Decree, which was recorded in the Official Records of Sacramento County, California, July 20, 1989, Bk 890720, Page 1004 (the "Partial Consent Decree").

WHEREAS, Paragraph 11(K) of the Partial Consent Decree provides that Aerojet or any grantee or successor may petition the Court for removal of the land restrictions.

WHEREAS, Paragraph 11(L) of the Partial Consent Decree states:

Recording by Aerojet or a successor with the Recorder of an approval, order or notice specified below in this Subparagraph (L) shall conclusively establish that Aerojet and any subsequent grantee is free of any restrictions under the Order released by said approval, order or notice: …

(4) A notice that the obligations have terminated pursuant to Paragraph 26 of the Decree to which notice Plaintiffs do not, within twenty (20) days of service, record a notice that such obligations have not so terminated: ….

WHEREAS, Aerojet Rocketdyne, Inc. (formerly "Aerojet-General Corporation"), the California Department of Toxic Substances Control, the U.S. Environmental Protection Agency, and the California Regional Water Quality Control Board, Central Valley Region have agreed upon the recordation of two Covenants to Restrict Use of Property, copies of which are attached hereto as Exhibit A as to property described therein (the "Property"). This Property is only a portion of the land upon which restrictions have been placed pursuant to the Partial Consent Decree. Particularly, the Property, known as Area 49000, comprises approximately 71.2 acres and is Assessor's

Parcel No. 072-0231-125, and is part of the Perimeter Groundwater Operable Unit (also known as "OU5") of the Site.

The Parties do hereby stipulate:

1.      Aerojet shall be deemed to have provided notice pursuant to Paragraph 11(L)(4) of the Partial Consent Decree that upon recording of the above-described Covenants to Restrict Use of Property, the restrictions set forth in Paragraph 11 have been removed as to the Property pursuant to Paragraph 26 of the Partial Consent Decree, and the Plaintiffs shall be deemed to have not recorded a notice of objection.

2.      The restrictions set forth in Paragraph 11 of the Partial Consent Decree have been removed as to the Property pursuant to Paragraph 26 of the Partial Consent Decree.

3.      Except for Assessor's Parcel No. 072-0231-125, also known as Area 49000, nothing herein releases or otherwise affects the obligations of Aerojet to comply with the provisions of the Partial Consent Decree.

4.      Nothing herein modifies or affects any unilateral administrative orders, agreements, or any other consent decrees issued or entered into by the Plaintiffs.

5.      The effective date of this Stipulation and Order shall be the date it is signed by the Court.

**IT IS SO STIPULATED.**


DATED:  September 12, 2022          COVINGTON & BURLING LLP


By  _/s/ Wendy L. Feng_
Wendy L. Feng
Attorneys for Defendants
AEROJET ROCKETDYNE, INC. and
CORDOVA CHEMICAL COMPANY

STIPULATION AND [PROPOSED] ORDER REMOVING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR ASSESSOR'S PARCEL NO. 072-0231-
125, ALSO KNOWN AS AREA 49000

3                    Civil Action No. 2:86-cv-00063-GEB

1

2   DATED:  April 13, 2023            By: */s/ Thomas Landers*
                                      *(as authorized on April 13, 2023)*
3                                     Thomas Landers (MD Attorney No. 1812110216)
                                      Trial Attorney
4                                     Environmental Enforcement Section
                                      Environment & Natural Resources Division
5                                     U.S. Department of Justice
                                      P.O. Box 7611 Ben Franklin Station
6                                     Washington, DC 20044-7611
                                      Phone:  (202) 514-5258
7                                     Fax:  (202) 514-0097
                                      Email: thomas.landers@usdoj.gov
8

9

10  DATED:  April 14, 2023            By: */s/ Erin Ganahl* (CA Bar No.: 247472)
                                      *(as authorized on April 14, 2023)*
11                                    Erin Ganahl
                                      Deputy Attorney General
12                                    Attorney for CALIFORNIA DEPARTMENT OF
                                      TOXIC SUBSTANCES CONTROL (as successor-in-
13                                    interest to California Department of Health Services)
                                      California Department of Justice
14                                    1515 Clay Street, 20th Floor
                                      Phone: (510) 879-0262
15                                    Email: Erin.Ganahl@doj.ca.gov
16

17

18  DATED: April 14, 2023             By: */s/ Matthew J. Goldman* (CA Bar No.: 113330)
                                      *(as authorized on April 14, 2023)*
19                                    Matthew J. Goldman
                                      Deputy Attorney General
20                                    Attorney for CALIFORNIA REGIONAL WATER
                                      QUALITY CONTROL BOARD, CENTRAL
21                                    VALLEY REGION
                                      California Department of Justice
22                                    1300 I Street
                                      P.O. Box 944255
23                                    Sacramento, CA 94244-2550
                                      Phone: 916-210-7841
24                                    Fax: 916-327-2319
                                      Email: Matthew.Goldman@doj.ca.gov
25

26

27

28

1

## [PROPOSED] ORDER

2

Having considered the foregoing Stipulation, and good cause appearing

3

therefor, **IT IS SO ORDERED**.

4

5

DATED:

6

7

_____

Honorable United States District Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

STIPULATION AND [PROPOSED] ORDER REMOVING
PARTIAL CONSENT DECREE PROVISIONS FOR LAND
RESTRICTIONS FOR ASSESSOR'S PARCEL NO. 072-0231-
125, ALSO KNOWN AS AREA 49000

Civil Action No. 2:86-cv-00063-GEB

**RECORDING REQUESTED BY:**
First American Title Company

**WHEN RECORDED MAIL DOCUMENT TO:**
Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, CA 95826
Attention: James Rohrer, P.G.
Site Mitigation and Restoration Program



**Sacramento County**
**Donna Allred, Clerk/Recorder**

| Doc # **202112270835** | Fees | $86.00 |
| 12/27/2021   12:31:42 PM | Taxes | $0.00 |
| ZRC | PCOR | $0.00 |
| Titles   1 | Paid | $86.00 |
| Pages   25 | | |

Space Above This Line for Recorder's Use Only

File No.: 3427-6274299 (LK)

COVENANT TO RESTRICT USE OF PROPERTY
ENVIRONMENTAL RESTRICTIONS ON PROPERTY AT A PORTION OF THE PERIMETER GROUNDWATER
OPERABLE UNIT (OU-5)
AEROJET GENERAL CORPORATION SUPERFUND SITE, RANCHO CORDOVA,
CALIFORNIA,
DTSC ~~PROJET~~ CODE 100002
Project

The document to which this page is affixed and made a part of is exempt from the fee imposed by the Building Homes & Jobs Act (SB 2-2017) (GC 27388.1) for the following reason:

(X) Recorded [concurrently] in connection with a transfer of real property subject to the imposition of Documentary Transfer Tax per GC 27388.1 (a) (2).

( ) Recorded [concurrently] in connection with a transfer of real property that is residential dwelling to an owner-occupier per GC 27388.1 (a) (2).

( ) Maximum fee of $225 has been reached per GC 27388.1 (a) (1).

( ) Not related to real property GC 27388.1 (a) (1).

Failure to include an exemption reason will result in the imposition of the $75 Building Homes and Jobs Act fee. Fees collected are deposited to the State and may not be available for refund.

RECORDING REQUESTED
BY:

Aerojet Rocketdyne, Inc.
P.O. Box 13222
Sacramento, California 95813
Attention: Legal Department

WHEN RECORDED, MAIL TO:

Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, California 95826
Attention: James Rohrer, P.G.
Site Mitigation and Restoration Program

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## COVENANT TO RESTRICT USE OF PROPERTY

### ENVIRONMENTAL RESTRICTIONS ON PROPERTY AT A PORTION OF THE PERIMETER GROUNDWATER OPERABLE UNIT (OU-5)

### AEROJET GENERAL CORPORATION SUPERFUND SITE, RANCHO CORDOVA, CALIFORNIA, DTSC PROJECT CODE 100002

#### *County of Sacramento, Assessor Parcel Number: 072-0231-125*

This Covenant and Agreement ("Covenant") is made by and among Aerojet Rocketdyne, Inc. (formerly named "Aerojet-General Corporation") (the "Covenantor"), the current owner of property situated in Sacramento County, State of California, described and depicted in Exhibit A, attached hereto and incorporated herein by this reference (the "Property"), the California Department of Toxic Substances Control (the "Department"), and the California Regional Water Quality Control Board, Central Valley Region ("RWQCB")(collectively referred to as the "Parties").

Pursuant to Civil Code section 1471, the Department and RWQCB have determined that this Covenant is reasonably necessary to protect present or future human health or safety or the environment as a result of the presence in groundwater of hazardous

materials as defined in Health and Safety Code section 25260 and waste as defined in Water Code section 13050(d).  The Parties hereby agree that, pursuant to Civil Code section 1471, Health and Safety Code section 25355.5, and Water Code section 13304, the use of the Property be restricted as set forth in this Covenant and that the Covenant shall conform with the requirements of California Code of Regulations, title 22, section 67391.1.

This Covenant shall be for the benefit of and shall be enforceable by the United States Environmental Protection Agency ("U.S. EPA"), as a third-party beneficiary pursuant to general contract law, including, but not limited to, Civil Code section 1559.

## ARTICLE I
## STATEMENT OF FACTS

1.01.   The Property.  The Property is described and depicted in Exhibit A, totals approximately 71.232 acres, and is generally described as Sacramento County Assessor Parcel Number (APN) 072-0231-125, which is located in Rancho Cordova, California.  The Property is part of the Aerojet-General Corporation Superfund Site ("NPL Site"), which U.S. EPA, pursuant to section 105 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. section 9605, placed on the National Priorities List (the "NPL"), by publication in the Federal Register on September 8, 1983 (40 C.F.R. Part 300).

1.02.   Remediation of the Property.  The Property, along with other land that is part of the NPL Site, was investigated by Covenantor under oversight of, and accepted by, U.S. EPA, RWQCB, and the Department (collectively, the "Regulatory Agencies") as part of the Perimeter Groundwater Operable Unit ("OU-5").  As a result of such investigation, U.S. EPA determined (which determination was concurred with by RWQCB and the Department) that groundwater remediation was required for the site. This decision document is entitled "Interim Record of Decision for Groundwater and Final Record of Decision for Soil for the Perimeter Groundwater Operable Unit OU-5" dated February 15, 2011 ("OU-5 ROD"). Groundwater remediation for the Property is being undertaken in accordance with section 2.12.3 of the OU-5 ROD.  The following

chemicals of concern ("COCs") that were identified in the OU-5 ROD have been found in the regional groundwater aquifers, including beneath and in the vicinity of the Property: 1,1,2-trichloroethane, 1,1-dichloroethene, 1,2-dichloroethane, 1,4-dioxane, carbon tetrachloride, chloroform, cis-1,2-dichloroethene, n-nitrosodimethylamine, perchlorate, tetrachloroethene, trans-1,2-cichloroethene, trichloroethene, and vinyl chloride.  The Covenantor owns and uses "Groundwater Remediation Systems" located on, under, and in the vicinity of the Property to conduct such groundwater remediation (Exhibit B).

 1.03. This groundwater remediation and monitoring under, on, and in the vicinity of the Property is ongoing and being conducted pursuant to a Statement of Work for Remedial Design and Remedial Action for Groundwater at the Perimeter Groundwater Operable Unit (OU-5) developed in accordance with the Unilateral Administrative Order for the Performance of Remedial Design and Interim Remedial Action for Groundwater (U.S. EPA Docket No. 9-2011-16) and approved by U.S. EPA on September 19, 2011. The following COCs remain at the Property in the regional groundwater aquifers, including beneath and in the vicinity of the Property above levels acceptable for unrestricted land use: 1,1-dichloroethene at 6.8 micrograms per liter (ug/L), chloroform at 3.3 ug/L, cis-1,2-dichloroethene at 98 ug/L, n-nitrosodimethylamine at 0.008 ug/L, perchlorate at 2,000 ug/L, tetrachloroethene at 280 ug/L, trans-1,2-cichloroethene at 13 ug/L, trichloroethene at 6,200 ug/L, and vinyl chloride at 17 ug/L.  Groundwater is not anticipated to be present within the first 15 feet below ground surface under and in the vicinity of the Property.  These COCs are hazardous substances as defined in Health and Safety Code section 25316, hazardous materials as defined in Health and Safety Code section 25260, and waste as defined in Water Code section 13050(d).

 1.04. <u>Land Use Covenant</u>.  This Covenant meets the requirement of imposing institutional controls under the OU-5 ROD (found at section 2.12.3 of the OU-5 ROD as to groundwater). This Covenant is necessary to restrict activity that may result in unacceptable exposure to groundwater beneath the Property.  In addition, a separate land use covenant inclusive of a portion of the Property will be recorded which documents restrictions related to vapor mitigation. That covenant will include prohibited activities relating to vapor mitigation, as more fully described in section 2.12.4 of the

OU-5 ROD. The Regulatory Agencies have concluded that the Property, when used in compliance with the Environmental Restrictions of this Covenant, and in compliance with the land use covenant related to vapor mitigation, does not present an unacceptable threat or risk to present and future human health or safety or the environment.

## ARTICLE II

### DEFINITIONS

2.01.  Covenantor.  "Covenantor" means Aerojet Rocketdyne, Inc.  For purposes of clarity, an "Owner" other than Aerojet Rocketdyne, Inc. is not a Covenantor.

2.02.  Department.  "Department" means the California Department of Toxic Substances Control and includes its successor agencies, if any.

2.03.  Environmental Restrictions.  "Environmental Restrictions" means all protective provisions, covenants, restrictions, requirements, prohibitions, and terms and conditions as set forth in any paragraph of this Covenant.

2.04.  Groundwater Remediation System.  "Groundwater Remediation System" or ("GRS") means the groundwater remedial equipment, facilities and systems located on the Property that are designed for the treatment, monitoring, extraction, removal, transport, injection, or recharge of groundwater, including groundwater monitoring and extraction wells and associated infrastructures such as pumping stations and pipelines, and those that may be installed in the future.  (Wells and associated pipelines that exist on the Property as of the effective date of this Covenant are depicted in Exhibit B, attached hereto and incorporated herein by this reference.)

2.05.  Improvements.  "Improvements" includes, but is not limited to: buildings, structures, roads, driveways, improved parking areas, wells, pipelines, or other utilities.

2.06.  Lease.  "Lease" means lease, rental agreement, or any other document that creates a right to use or occupy any portion of the Property.

2.07.  Lot or Parcel.  "Lot or Parcel" means, to the extent that the Property is subdivided, an interchangeable term intended to include separately owned lots, parcels, areas or space on land, including common areas.  To the extent that the Property is not subdivided, then "Lot or Parcel" means the entirety of the Property.

2.08.  Occupant.  "Occupant" or "Occupants" means Owner and any person or entity who at the time is entitled by ownership, leasehold, or other legal relationship to the right to occupy any portion of the Property.

2.09.  Owner.  "Owner" or "Owners" means the Covenantor, its successors in interest, and their successors in interest, including heirs and assigns, which at any time hold title or an ownership interest to all or any portion of the Property

2.10.  Regulatory Agencies.  "Regulatory Agencies" means the Department, RWQCB, and U.S. EPA.

2.11.  RWQCB.  "RWQCB" means the California Regional Water Quality Control Board, Central Valley Region, and includes its successor agencies, if any.

2.12.  U.S. EPA.  "U.S. EPA" means the United States Environmental Protection Agency, and includes its successor agencies, if any.

### ARTICLE III

### GENERAL PROVISIONS

3.01.  Runs with the Land.  This Covenant sets forth Environmental Restrictions that apply to and encumber the Property and every portion thereof no matter how it is improved, held, used, occupied, leased, sold, hypothecated, encumbered, or conveyed. This Covenant: (a) runs with the land pursuant to Health and Safety Code section 25355.5 and Civil Code section 1471; (b) inures to the benefit of and passes with each and every portion of the Property; (c) is for the benefit of and is enforceable by the Regulatory Agencies; and (d) is imposed upon the entire Property unless expressly stated as applicable only to a specific portion thereof.

3.02.  Binding upon Owners/Occupants.  This Covenant binds all Owners and Occupants of the Property, their heirs, successors, assignees, agents, employees, and lessees.  Pursuant to Civil Code section 1471, all successive Owners of the Property are expressly bound hereby for the benefit of the Regulatory Agencies.  This Covenant is binding on all Owners and Occupants, and their respective successors and assignees, only during and in respect of their respective successive periods of ownership or occupancy such that an Owner's or Occupant's rights and obligations under this Covenant shall terminate upon transfer, expiration, or termination of the Owner's or Occupant's interest in the Property, except that such Owner's or Occupant's

liability for any violations of, or non-compliance with, the Environmental Restrictions of this Covenant or any acts or omissions during such ownership or occupancy shall survive any transfer, expiration, or termination of the Owner's or Occupant's interest in the Property.

3.03.  Incorporation into Deeds and Leases.  This Covenant and its Environmental Restrictions shall be incorporated by reference in each and every deed and Lease for any portion of the Property.

3.04.  Conveyance of Property.  The Owner shall provide Notice to the Regulatory Agencies not later than thirty (30) calendar days after any conveyance or receipt of any ownership interest in a Lot or Parcel within the Property (excluding leases, mortgages, liens, and other non-possessory encumbrances).  The Notice shall include the name and mailing address of the new Owner of such Lot or Parcel and shall reference the site name ("Aerojet General Corporation Superfund Site"), the site code ("DTSC Project Code 100002"), and the APN ("072-0231-125") listed on page one of this Covenant.  If such Lot or Parcel has been assigned a different APN from the one listed on page one of this Covenant, or previously associated with the Lot or Parcel as identified in a prior notice to the Regulatory Agencies under this subsection, each such APN that covers such new ownership of that Lot or Parcel must be provided in the Notice.  The Regulatory Agencies shall not, by reason of this Covenant, have authority to approve, disapprove, or otherwise affect a proposed conveyance, except as otherwise provided by law or administrative order.

3.05.  Costs of Administering the Covenant.  The Department and RWQCB have already incurred and will in the future incur costs associated with this Covenant. Therefore, the Covenantor hereby covenants for the Covenantor and for all subsequent Owners that, pursuant to California Code of Regulations, title 22, section 67391.1(h) and Water Code section 13304. These costs shall be paid by the Owner, or on the Owner's behalf by another party. Pursuant to California Code of Regulations, title 22,

section 67391.1(h), the Owner is ultimately responsible for costs incurred pursuant to this Section 3.05 if such costs are not paid by another party on the Owner's behalf.

3.06.   Advance Notice on Conveyance of Property.  At least 60 days prior to conveyance of the Property to any other agency, person, and/or entity, the Owner shall provide notice of such intended conveyance to the Regulatory Agencies and Notice parties as set forth in 7.04. If the Property has been subdivided and a common interest obligation is in place that will maintain all required mitigation measures, this requirement does not apply to the transfer of individual Lots or Parcels within the Property. The Department shall not, by reason of this Covenant, have authority to approve, disapprove, or otherwise affect proposed conveyance, except as otherwise provided by law or by administrative order.

3.07.   Transfer of Property to Multiple Owners.  The Owner shall, prior to transfer, propose a mechanism for the Department's approval that will provide for performance of the obligations set forth in Sections 3.04 and 4.05 of this Covenant on behalf of multiple Owners of the Property if the Property is subdivided into more than two separate subparcels creating either of the following conditions: (1) there will be more than ten Owners of different subparcels on the Property, or (2) any of the subparcels will become a common interest development as defined in Section 1351 of the California Civil Code, or would in any other way become subject to multiple separate ownership interests.

## ARTICLE IV
### RESTRICTIONS AND REQUIREMENTS

4.01.   Prohibited Activities Relating to Groundwater.  No activities at the Property shall be conducted that may interfere with the integrity or effectiveness of the Groundwater Remediation System and the related monitoring, operation and maintenance activities, required for the groundwater beneath the Property, including any of the following activities:

(a)   No Extraction.  No drilling, boring, or constructing, or using a well for the purpose of extracting water for any use, including, but not limited to, domestic, municipal, potable, irrigation, or industrial uses, except (i) for Regulatory-Agency-approved site remediation; or (ii) unless and until expressly

Page 7

approved in writing by USEPA and RWQCB. The Property shall also not be used to conduct extraction of groundwater encountered during excavations for the construction of buildings or other improvements unless and until expressly permitted in writing by RWQCB.

(b)     No Recharge. No installing, operating, or maintaining a recharge or sedimentation control basin that is designed to infiltrate water unless and until expressly approved in writing by USEPA and RWQCB.

(c)     No Injection. No installing, operating, or maintaining any injection well for any use unless and until expressly approved in writing by USEPA and RWQCB.

(d)     Upon USEPA's and RWQCB's approval as to Section 4.01(a), (b), or (c), all necessary permits to install, operate, or maintain such facilities shall be obtained under applicable law.

4.02.  Non-Interference with Remedy Components.

(a)     All uses and development of the Property shall preserve the integrity or effectiveness of the Groundwater Remediation System (GRS) or shall be in compliance with any Department-approved remedy implementation that modifies or replaces the GRS with remedy elements approved by the Department under applicable law.

(b)     The GRS shall not be altered without written approval by the Department, or as approved by the Department in remedy implementation or remedy repair or maintenance.

(c)     Unless the Covenantor or new Owner is implementing a new remedy decision for the Property under DTSC oversight, the current Owner, or another on the owner's behalf, shall notify the Department of each of the following:

(i)     the type, cause, location, and date of any damage to the GRS and

(ii)    the type and date of repair of such damage.

For the avoidance of confusion, actions taken pursuant to Department advance written approval are not deemed "interference" to the GRS. Notification to the Department shall be made as provided below within ten (10) working days of the discovery of any such interference, and within twenty (20) working days after the completion of any repairs. Timely and accurate notifications by any Owner or Occupant shall satisfy this requirement on behalf of all other Owners and Occupants.

     4.03   Access for the Regulatory Agencies.  The Regulatory Agencies shall have reasonable right of entry and access to the Property for inspection, investigation, remediation, monitoring, and other activities consistent with the purposes of this Covenant deemed necessary by the Regulatory Agencies to protect the public health or safety or the environment.  Nothing in this instrument shall limit or otherwise affect the U.S EPA's right of entry and access, or U.S. EPA's authority to take response actions under CERCLA; the National Contingency Plan, 40 Code of Federal Regulations Part 300 (1997) and its successor provisions; or federal law.  Nothing in this instrument shall limit or otherwise effect the Department's right of entry and access, or authority to take response actions under CERLCA; the National Contingency Plan, 40 Code of Federal Regulations Part 300 (1997) and its successor provisions; Chapter 6.8, Division 20 of the California Health and Safety Code; California Civil Code; or other applicable State law; or the RWQCB's authority under applicable law.

     4.04.  Access for Implementing Actions.  The entity or person responsible for implementing activities under a Regulatory Agency-approved plan for any action to be taken on the Property shall have reasonable right of entry and access to the Property for the purpose of implementing those activities until the Regulatory Agencies determine that those activities are not required.

     4.05.  Inspection and Reporting Requirements.  The ROD applicable to the Property requires site inspections and annual compliance reporting to address the monitoring and maintenance necessary to ensure compliance with the Restrictions, and terms of the Covenant. The Owner shall conduct an annual inspection of the Property verifying compliance with this Covenant and shall submit an annual inspection report to the Department and RWQCB for their approval by February 15th of each year. Submission of an adequate annual report on compliance by the Owner, or by another

party on the Owner's behalf, shall be deemed to comply with the reporting requirements of this Section. The annual inspection report must include the dates, times, and names of those who conducted the inspection and reviewed the annual inspection report. It also shall describe how the observations that were the basis for the statements and conclusions in the annual inspection report were performed (*e.g.*, drive by, fly over, walk in, etc.). If any violation is noted, the Owner, or another party on the Owner's behalf, shall work with the Covenantor, and the Regulatory Agencies to correct the problem(s) discovered. The Owner is ultimately responsible for the requirements of this Section 4.05. The Owner shall cooperate with, and assist as necessary, any entity that is obligated to perform the requirements required by this Section 4.03 as to the annual inspection report and the steps taken to correct the violation and return to compliance with this Covenant. If the Owner, or another on the Owner's behalf, identifies any violations of this Covenant during the annual inspection or at any other time, the Owner, or another working on behalf of the Owner, must within ten (10) calendar days of identifying the violation:

(a)     Determine the identity of the party in violation;

(b)     Send a letter advising the party of the violation of the Covenant; and

(c)     Demand that the violation cease immediately.

Additionally, a copy of any correspondence related to the violation of this Covenant shall be sent to the Department and RWQCB within ten (10) calendar days of its original transmission.

## ARTICLE V
### ENFORCEMENT

5.01.   Enforcement.   Failure of any Owner or Occupant to comply with this Covenant shall be grounds for the Department or RWQCB to require modification or removal of any Improvements constructed or placed upon any portion of the Property in violation of this Covenant.   Violation of this Covenant such as failure to submit (including submission of any false statement) record or report to the Department, shall be grounds

for the Department or RWQCB to pursue administrative, civil, or criminal actions, as provided by law.

5.02.   Enforcement Rights of U.S. EPA as a Third-Party Beneficiary.  U.S. EPA, as a third-party beneficiary, has the right to enforce the Environmental Restrictions of this Covenant.

5.03.   U.S. EPA's CERCLA Authority.  Nothing in this Covenant shall limit or otherwise affect U.S. EPA's right of entry and access, or U.S. EPA's authority to take response actions, under CERCLA; the National Contingency Plan, 40 Code of Federal Regulations, Part 300, and its successor provisions; or federal law.

**ARTICLE VI**

VARIANCE, REMOVAL, AND TERM

6.01.   Variance.  Any person may apply to the Department for a written variance from any of the Environmental Restrictions of this Covenant.  If the application is submitted to the Department, such application shall be made in accordance with Health and Safety Code section 25223.  After consulting with the RWQCB, the Department shall make the decision on the variance and shall ensure that its decision is consistent with any enforcement orders or permits issued by RWQCB regarding the Property.  A copy of the application shall be submitted to RWQCB, U.S. EPA, and Covenantor simultaneously when it is submitted to the Department.  No variance may be granted under this Section without prior Notice to and an opportunity to comment by U.S. EPA and Covenantor.

6.02   Removal of Environmental Restrictions.  Any person may apply to the Department or RWQCB to remove any of the Environmental Restrictions of this Covenant as it applies to all or any portion of the Property.  If the application is submitted to the Department, such application shall be made in accordance with Health and Safety Code section 25224.  After consulting with RWQCB, the Department shall make the decision on the termination or modification and shall ensure that its decision is consistent with any enforcement orders or permits issued by RWQCB regarding the Property.  A copy of the application shall be submitted to RWQCB, U.S. EPA, and Covenantor simultaneously when it is submitted to the Department.  No removal may be

Page 11

granted under this Section without prior Notice to and an opportunity to comment by U.S. EPA and Covenantor.

  6.03. <u>Term</u>. Unless ended in accordance with Section 6.02, by law, or by the Department, in the exercise of its discretion, after consulting with RWQCB, and after providing Notice to and an opportunity to comment by U.S. EPA and Covenantor, this Covenant shall continue in effect in perpetuity.

<b>ARTICLE VII</b>

<u>MISCELLANEOUS</u>

  7.01. <u>No Dedication or Taking Intended</u>. Nothing set forth in this Covenant shall be construed to be a gift or dedication, or offer of a gift or dedication, of the Property, or any portion thereof to the general public or anyone else for any purpose whatsoever. Nothing in this Covenant shall be construed to effect a taking under state or federal law.

  7.02. <u>References to Regulatory Agencies</u>. All references to the Regulatory Agencies, the Department, RWQCB or U.S. EPA include successor agencies, departments or other successor entities of the Regulatory Agencies, the Department, RWQCB or U.S. EPA.

  7.03. <u>Recordation</u>. The Covenantor shall record this Covenant, with all referenced Exhibits, in the County of Sacramento within ten (10) calendar days of the Covenantor's receipt of a fully executed original.

  7.04. <u>Notices</u>. Whenever any person gives or serves any Notice ("Notice" as used herein includes any demand or other communication with respect to this Covenant), each such Notice shall be in writing, addressed to the party to be served at the address(es) set forth below, or at such other address for which that party may have given notice under the provisions of this Section, and shall be deemed effective: (i) when delivered, if personally delivered to the person being served (or, for delivery to an entity, to the person designated for such entity in the address(es) provided below or, if none, to an officer of a corporate party, a manager or officer of a limited liability company, or a partner of a partnership (as applicable) being served); or (ii) five (5) calendar days after deposit in the mail, if mailed by United States mail, postage paid, certified, return receipt requested:

To Covenantor:     Aerojet Rocketdyne, Inc.
                   2001 Aerojet Road
                   Rancho Cordova, CA  95742
                   Attn:  Legal Department

To Owner:          Name and address of any new owner as identified to
                   the Department under Section 3.04 of this Covenant.

To Department:     Branch Chief
                   Site Mitigation and Restoration Program
                   Department of Toxic Substances Control
                   8800 Cal Center Drive, 3rd Floor
                   Sacramento, CA  95826-3200

To RWQCB:          Executive Officer
                   California Regional Water Quality Control Board
                   Central Valley Region
                   11020 Sun Center Drive, #200
                   Rancho Cordova, CA  95670-6114

To U.S. EPA        U.S. Environmental Protection Agency
                   Region IX
                   Attention:  Remedial Project Manager
                   75 Hawthorne Street
                   San Francisco, CA  94105-3901

Any party may change its address or the individual to whose attention a Notice is to be sent by giving written Notice in compliance with this Section.

7.05.   Partial Invalidity.  If this Covenant or any of its terms are determined by a court of competent jurisdiction to be invalid for any reason, the surviving portions of this Covenant shall remain in full force and effect as if such portion found invalid had not been included herein.

7.06   Statutory and Regulatory References.  All statutory and regulatory references include successor provisions.

7.07.   Counterparts.  The Parties may execute this Covenant in two (2) or more counterparts, which shall, in the aggregate, be signed by all Parties; each counterpart shall be deemed an original of this Covenant as against any Party who has signed it.  In the event of any disparity between counterparts produced, the counterpart recorded in the Official Records of Sacramento County, California, shall be controlling.

7.08.   <u>Representative Authority</u>.  The undersigned representative of each party to this Covenant certifies that he or she is fully authorized to enter into the terms and conditions of this Covenant and to execute and legally bind that party to this Covenant. Further, if this Covenant is held invalid because the undersigned representative lacked the authority to execute the Covenant, the undersigned representative agrees to be liable to the Department for the costs of securing any necessary properly executed and recorded replacement Covenant.

[Signatures on Next Page]

IN WITNESS WHEREOF, the Parties execute this Covenant.

Covenantor:    Aerojet Rocketdyne, Inc.

By: _____

Print Name and Title: DAVID HATCH , VP & CID EASTON REAL ESTATE

Date: _____12 - 15 - 2021_____

California Department of Toxic Substances Control

By: _____

Print Name and Title: Hortensia Muniz. Branch Chief

Date: _____12.16.2021_____

California Regional Water Quality Control Board, Central Valley Region

By: _____Signed in Counterpart_____

Print Name and Title: Signed in Counterpart

Date: _____Signed in Counterpart_____

**IN WITNESS WHEREOF, the Parties execute this Covenant.**

**Covenantor:   Aerojet Rocketdyne, Inc.**

**By:** _____Signed in Counterpart_____

**Print Name and Title:** ___Signed in Counterpart___ Signed in Counterpart

**Date:** ___Signed in Counterpart___

**California Department of Toxic Substances Control**

**By:** _____ Signed in Counterpart

**Print Name and Title:** ___Signed in Counterpart___

**Date:** ___Signed in Counterpart___

**California Regional Water Quality Control Board, Central Valley Region**

**By:** _____

**Print Name and Title:** _Patrick Pulupa, Executive Officer_

**Date:** _12/17/21_

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____

On _____ before me,

_____

*(space above this line is for name and title of the officer/notary),*

personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

_____ (seal)

Signature of Notary Public

Page 16

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ⁓Sacramento

On ⁓December 15, 2021 before me,

⁓Christina M. Groen, Notary Public

*(space above this line is for name and title of the officer/notary),*

personally appeared ⁓David Hatch , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

⁓ (seal)

Signature of Notary Public

> CHRISTINA M. GROEN
> COMM. #2230826
> Notary Public - California
> Sacramento County
> My Comm. Expires Mar. 9, 2022

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Sacramento_

On _December 16, 2021_ before me,

_____Christina M. Groen, Notary Public_____

*(space above this line is for name and title of the officer/notary),*

personally appeared _Hortensia Muniz_____ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,



CHRISTINA M. GROEN
COMM. #2230826
Notary Public - California
Sacramento County
My Comm. Expires Mar. 9, 2022

_Christina M. Groen_ (seal)

Signature of Notary Public

Page 17

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Sacramento

On 12/17/2021 before me,

Alicia McDonald, notary public

*(space above this line is for name and title of the officer/notary),*

personally appeared Patrick Pulupa , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

ALICIA MCDONALD
Notary Public - California
Sacramento County
Commission # 2328766
My Comm. Expires May 19, 2024

_____ (seal)
Signature of Notary Public

Page 18

## ACKNOWLEDGMENT

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

**State of California**

**County of** _____

**On** _____ **before me,**

---

*(space above this line is for name and title of the officer/notary)*,

personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal,**

_____ **(seal)**
**Signature of Notary Public**

27777.360
02/03/2021
BWB

## EXHIBIT "A"
### DESCRIPTION OF SUPERFUND AREA

All that real property situated in the County of Sacramento, State of California, being a portion of the Lands of Aerojet Rocketdyne, Inc., an Ohio Corporation and New Resultant Parcel 9 as described in that certain Grant Deed recorded August 12, 2014 in Book 20140812 at Page 0634, Official Records of Sacramento County, being more particularly described as follows:

Beginning at the northwest corner of Lot 1 as shown on that map entitled "Subdivision Number 2004-0035.01 Easton Phase 1 Large Lot Map" filed for record September 17, 2015 in Book 386 of Maps at Page 4, Sacramento County Records, thence from the **POINT OF BEGINNING** and along the westerly line of said Lot 1  South 26°06'45" East a distance of 26.86 feet; thence continuing along said westerly line South 30°19'16" East a distance of 1247.14 feet; thence leaving said westerly line for the following eight (8) courses and distances:

1.  South 61°24'50" West a distance of 1189.10 feet;
2.  North 26°43'48" West a distance of 482.43 feet;
3.  South 63°40'13" West a distance of 1365.34 feet;
4.  North 23°20'08" West a distance of 150.44 feet;
5.  South 46°39'05" West a distance of 420.22 feet;
6.  South 65°44'47" West a distance of 259.40 feet;
7.  North 18°42'14" West a distance of 817.52 feet; and
8.  North 63°53'24" East a distance of 3014.90 feet to the **POINT OF BEGINNING.**

Containing 71.232 acres of land, more or less.

*See Exhibit "A-1", plat to accompany description attached hereto and made a part hereof.*

This legal description was prepared by me or under my supervision pursuant to Section 8729 (2) of the Professional Land Surveyors Act

*Paul Ferguson*

Paul Ferguson, Jr., PLS 9265
License Expiration Date: 03-31-2022

Date: _2-8-2021_

Description prepared by:
**MACKAY & SOMPS CIVIL ENGINEERS, INC.**
1025 Creekside Ridge Drive, Suite 150, Roseville, CA  95678
P:\27777\survey-MS\mapping\desc\BOU NO. 6\BOU DESC..docx

Page 1 of 1





**RECORDING REQUESTED BY:**
First American Title Company

**WHEN RECORDED MAIL DOCUMENT TO:**
Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, CA 95826
Attention: James Rohrer, P.G.
Site Mitigation and Restoration Program



**Sacramento County**
**Donna Allred, Clerk/Recorder**

| Doc # **202112270836** | Fees | $107.00 |
|---|---|---|
| 12/27/2021    12:31:42 PM | Taxes | $0.00 |
| ZRC | PCOR | $0.00 |
| Titles      1 | Paid | $107.00 |
| Pages    32 | | |

_____ Space Above This Line for Recorder's Use Only _____

File No.: 3427-6274299 (LK)

<u>COVENANT TO RESTRICT USE OF PROPERTY</u>
<u>ENVIRONMENTAL RESTRICTIONS ON PROPERTY AT A PORTION OF THE PERIMETER GROUNDWATER</u>
<u>OPERABLE UNIT (OU-5)</u>
<u>AEROJET GENERAL CORPORATION SUPERFUND SITE, RANCHO CORDOVA,</u>
<u>CALIFORNIA,</u>
<u>DTSC ~~PROJET~~ CODE 100002</u>
Project

The document to which this page is affixed and made a part of is exempt from the fee imposed by the Building Homes & Jobs Act (SB 2-2017) (GC 27388.1) for the following reason:

(X) Recorded [concurrently] in connection with a transfer of real property subject to the imposition of Documentary Transfer Tax per GC 27388.1 (a) (2).

( ) Recorded [concurrently] in connection with a transfer of real property that is residential dwelling to an owner-occupier per GC 27388.1 (a) (2).

( ) Maximum fee of $225 has been reached per GC 27388.1 (a) (1).

( ) Not related to real property GC 27388.1 (a) (1).

Failure to include an exemption reason will result in the imposition of the $75 Building Homes and Jobs Act fee. Fees collected are deposited to the State and may not be available for refund.

RECORDING REQUESTED
BY:

Aerojet Rocketdyne, Inc.
P.O. Box 13222
Sacramento, California 95813
Attention: Legal Department

WHEN RECORDED, MAIL TO:

Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, California 95826
Attention: James Rohrer, P.G.
Site Mitigation and Restoration Program

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## COVENANT TO RESTRICT USE OF PROPERTY

### ENVIRONMENTAL RESTRICTIONS ON PROPERTY AT A PORTION OF THE PERIMETER GROUNDWATER OPERABLE UNIT (OU-5)

### AEROJET GENERAL CORPORATION SUPERFUND SITE, RANCHO CORDOVA, CALIFORNIA
### DTSC PROJECT CODE 100002

### *County of Sacramento, Assessor Parcel Number: 072-0231-125 (Portion)*

This Covenant and Agreement ("Covenant") is made by and among Aerojet
Rocketdyne, Inc. (formerly named "Aerojet-General Corporation") (the "Covenantor"),
the current owner of property situated in Sacramento County, State of California,
described and depicted in Exhibit A, attached hereto and incorporated herein by this
reference (the "Property"), the California Department of Toxic Substances Control (the
"Department"), and the California Regional Water Quality Control Board, Central Valley
Region ("RWQCB")(collectively referred to as the "Parties").

Pursuant to Civil Code section 1471, the Department and RWQCB have determined
that this Covenant is reasonably necessary to protect present or future human health or
safety or the environment as a result of the presence in groundwater and soil vapor of

hazardous materials as defined in Health and Safety Code section 25260 and waste as defined in Water Code section 13050(d), some of which have the potential to volatilize upward into soil.  The Parties, hereby agree that, pursuant to Civil Code section 1471, Health and Safety Code section 25355.5, and Water Code section 13304, the use of the Property be restricted as set forth in this Covenant and that the Covenant shall conform with the requirements of California Code of Regulations, title 22, section 67391.1.

This Covenant shall be for the benefit of, and shall be enforceable by, the United States Environmental Protection Agency ("U.S. EPA"), as a third-party beneficiary pursuant to general contract law, including, but not limited to, Civil Code section 1559.

ARTICLE I

STATEMENT OF FACTS

1.01.  The Property.  The Property, described and depicted in in Exhibit A, totals approximately 60.389 acres and is generally described as a portion of Sacramento County Assessor's Parcel Number 072-0231-125, which is located in Rancho Cordova, California.  The Property is part of the Aerojet-General Corporation Superfund Site ("NPL Site"), which U.S. EPA, pursuant to section 105 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. section 9605, placed on the National Priorities List (the "NPL"), by publication in the Federal Register on September 8, 1983 (40 C.F.R. Part 300).

1.02.  Remediation of the Property.  The Property, along with other land that is part of the NPL Site, was investigated by Covenantor under oversight of, and accepted by, U.S. EPA, RWQCB, and the Department (collectively, the "Regulatory Agencies") as part of the Perimeter Groundwater Operable Unit ("OU-5").  As a result of such investigation, U.S. EPA determined (which determination was concurred with by RWQCB and the Department) in its decision document entitled "Interim Record of Decision for Groundwater and Final Record of Decision for Soil for the Perimeter Groundwater Operable Unit OU-5" dated February 15, 2011 ("OU-5 ROD") that the selected remedy components on the Property include the following:

(a)     Install and operate a vapor extraction system in soil areas 32D, 34D, 35D, and 38D to remove VOCs from subsurface soil.

(b)     Restrict land use to commercial or industrial use in soil areas 32D, 34D, 35D, and 38D through appropriate land use covenants and employ soil vapor mitigation as necessary, until the cleanup attains unrestricted use levels of VOC COCs based on USEPA Region 9 Soil Vapor Screening Levels, adjusted with location- and depth-specific attenuation factors approved by USEPA.

(c)     Control the risks from elevated VOCs measured in the vadose zone in soil area 33D using vapor mitigation systems that prevent movement of contaminant vapors into residential or commercial buildings constructed at this location.

(d)     Install, operate, and maintain a groundwater remediation system to remove VOCs from groundwater.

The investigation and remedial actions taken under the oversight of the Regulatory Agencies, and other U.S. EPA documents regarding this Site, as well as additional information on the Site and the Property, are on file and available for review at the following document repositories and websites:

(a)     Sacramento Public Library, Central Library, 828 I Street, 2nd floor, Sacramento, California 95814, (916) 264-2920

(b)     EPA Region 9 Superfund Records Center, 95 Hawthorne Street - Suite 403S, San Francisco, California  94105, (415) 820-4700

(c)     https://www.epa.gov/enforcement/case-summary-epa-issues-order-aerojet-general-corporation-superfund-site

(d)     https://www.envirostor.dtsc.ca.gov/public/profile_report.asp?global_id=34370002

(e)     https://geotracker.waterboards.ca.gov/profile_report?global_id=SL185992958

Documents specific to the Property, which includes soil areas 32D, 33D, 34D, 35D and 38D are available at:

(a)     https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=34370002&site_id=2009818

Page 3

(b)      https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=3
4370002&site_id=2009819

1.03.   Groundwater remediation and monitoring under, on, and in the vicinity of
the Property is ongoing and being conducted pursuant to a Statement of Work for
Remedial Design and Remedial Action for Groundwater at the Perimeter Groundwater
Operable Unit (OU-5) developed in accordance with the Unilateral Administrative Order
for the Performance of Remedial Design and Interim Remedial Action for Groundwater
(U.S. EPA Docket No. 9-2011-16) and approved by U.S. EPA on September 19, 2011.
Chemicals of Concern ("COCs"), including trichloroethylene (TCE), perchlorate and N-
Nitrosodimethylamine (NDMA), have been found in the regional groundwater aquifers,
including beneath and in the vicinity of the Property.  These COCs include volatile
organic compounds which may have the potential to volatilize vertically from the
groundwater toward the ground surface.  These COCs are hazardous substances as
defined in Health and Safety Code section 25316, hazardous materials as defined in
Health and Safety Code section 25260, and waste as defined in Water Code section
13050(d).  A separate land use covenant has been recorded for the Property that
identifies the restrictions and requirements related to hazardous substances found in
groundwater beneath the Property.

1.04.   Most infrastructure historically located on the Property has been removed,
including underground storage tanks (USTs), aboveground storage tanks, rail spurs,
septic tanks, drainage lines, and most buildings and sumps.

Source Areas 32D, 34D, 35D, and 38D include the following uses and features:

(a)      Drainage ditches (Areas 32D, 34D, and 38D);

(b)      Two former sumps (removed) and one former UST (removed)
associated with former Building 49-008 (Area 32D);

(c)      Former chemical storage tank area (removed) north of former
Buildings 49-005, 49-008, and 49-009 (Area 32D);

(d)      Former storage tank farm (removed) and rail spur (removed) (Area
32D);

Page 4

    (e)     Former sump (removed) and former UST (removed) associated with former Building 49-018 (Area 38D);

    (f)     Two former sumps (removed) and a former septic tank (removed) associated with former Building 49-014 (Area 35D); and

    Other remaining features within the Property include:

    (a)     Building 49011

    (b)     Building 49015

    (c)     Portions of a drainage ditch

Site background information was originally included in the Remedial Investigation/Feasibility Study (RI/FS) Report for PGOU Lands, dated June 25, 2009 (Aerojet and ERM-West, 2009).

1.05.  As stated in Section 1.02 above, the U.S. EPA determined (which determination was concurred with by RWQCB and the Department) that SVE was required to remove volatile organic compounds from the subsurface soils in areas 32D, 34D, 35D, and 38D. This remedy occurred between 2016 and 2019 under oversight of the Regulatory Agencies.  The completion report found the SVE system was no longer cost effective to continue run, and that the COCs listed in Exhibit B remain in the soils and vadose zone on the Property above levels acceptable for unrestricted land use.

U.S. EPA issued a determination (with which the Department and RWQCB concurred) that the SVE portion of the remedial action was complete in a document entitled Approval of Final Remedial Action Completion Report, Soil Vapor Extraction System, Central 49000 Area on August 6, 2021.  An electronic version of this report can be found at: (https://www.envirostor.dtsc.ca.gov/public/deliverable_documents/1307000279/aerojet_central_area_49000_sve_ra_completion_rpt_20210608%20%282%29.pdf).  U.S. EPA's determination stated that the 49000 Area remedy will not be considered complete until land use controls are approved by EPA and State agencies and recorded by Sacramento County.  As stated in Section 1.02 above, the U.S. EPA determined (which determination was concurred with by RWQCB and the Department) that institutional and engineering controls (land use covenant prohibiting residential use, implementation of soil vapor mitigation methods for any vertical development, and implementation of the

groundwater remediation system) are required to manage any residual risk until the cleanup attains unrestricted use levels.

1.06.   Land Use Covenant.  This Covenant meets the requirement of imposing institutional controls under the OU-5 ROD (found at section 2.12.4 of the OU-5 ROD as to vapor monitoring and mitigation) and is necessary to restrict activity that may result in unacceptable exposure to potential soil vapor contamination beneath the Property.  In addition, a separate land use covenant inclusive of the Property will be recorded which documents groundwater restrictions, including prohibited activities relating to groundwater, as more fully described in section 2.12.3 of the OU-5 ROD.  The Regulatory Agencies have concluded that the Property, when used in compliance with the Environmental Restrictions of this Covenant, together with in compliance with the necessary restrictions on groundwater use (under Order or under a Covenant for groundwater), does not present an unacceptable threat or risk to present and future human health or safety or the environment.

## ARTICLE II
### DEFINITIONS

2.01.   Covenantor.  "Covenantor" means Aerojet Rocketdyne, Inc.  For purposes of clarity, an "Owner" other than Aerojet Rocketdyne, Inc. is not a Covenantor.

2.02   CERCLA Lead Agency.  "CERCLA Lead Agency" means the governmental entity having the designated lead responsibility to implement response action under the National Contingency Plan ("NCP"), 40 C.F.R. Part 300.  U.S. EPA or a state agency acting pursuant to a contract or cooperative agreement executed under CERCLA section 104(d)(1), 42 U.S.C. 9604(d)(1), or designated pursuant to a CERCLA Memorandum of Agreement entered into under subpart F of the NCP (40 C.F.R. 300.505), may be designated CERCLA Lead Agency.

2.03.   Department.  "Department" means the California Department of Toxic Substances Control and includes its successor agencies, if any.

2.04.   Environmental Restrictions.  "Environmental Restrictions" means all protective provisions, covenants, restrictions, requirements, prohibitions, and terms and conditions as set forth in any paragraph of this Covenant.

2.05. <u>Existing Structures</u>. "Existing Structures" means the structures identified in Exhibit C.

2.06   <u>Groundwater Remediation System</u>. "Groundwater Remediation System" or ("GRS") means the groundwater remedial equipment, facilities and systems located on the Property that are designed for the treatment, monitoring, extraction, removal, transport, injection, or recharge of groundwater, including groundwater monitoring and extraction wells and associated infrastructures such as pumping stations and pipelines, and those that may be installed in the future. (Wells and associated pipelines that exist on the Property as of the effective date of this Covenant are depicted in Exhibit D, attached hereto and incorporated herein by this reference.)

2.07. <u>Improvements</u>. "Improvements" includes, but is not limited to: buildings, structures, roads, driveways, improved parking areas, wells, pipelines, or other utilities.

2.08. <u>Lease</u>. "Lease" means lease, rental agreement, or any other document that creates a right to use or occupy any portion of the Property.

2.09. <u>Lot or Parcel</u>. "Lot or Parcel" means, to the extent that the Property is subdivided, an interchangeable term intended to include separately owned lots, parcels, areas or space on land, including common areas. To the extent that the Property is not subdivided, then "Lot or Parcel" means the entirety of the Property.

2.10. <u>Occupant</u>. "Occupant" or "Occupants" means Owner and any person or entity entitled by ownership, leasehold, or other legal relationship to the right to occupy any portion of the Property.

2.11. <u>Owner.</u> "Owner" or "Owners" means the Covenantor, its successors in interest, and their successors in interest, including heirs and assigns, which at any time hold title or an ownership interest to all or any portion of the Property.

2.12. <u>Regulatory Agencies</u>. "Regulatory Agencies" means the Department, RWQCB, and U.S. EPA.

2.13. <u>RWQCB</u>. "RWQCB" means the California Regional Water Quality Control Board, Central Valley Region, and includes its successor agencies, if any.

2.14. <u>U.S. EPA</u>. "U.S. EPA" means the United States Environmental Protection Agency, and includes its successor agencies, if any.

2.15.  Vapor Mitigation.  "Vapor Mitigation" means a constructed feature or features for buildings to prevent potential exposure to concentrations of volatile organic compounds that may be present in soil vapor that require Vapor Mitigation in accordance with Article IV below and designed by an appropriately licensed engineer to the applicable regulatory agency guidance and standards.

2.16.  Remedial Systems.  "Remedial Systems" shall mean the remedial equipment and systems located on the Property, including but not limited to groundwater monitoring wells, groundwater extraction wells, injection wells, soil gas wells and probes, groundwater conveyance piping, power and communication conduits, tie-in vaults, and any other component of the groundwater extraction and treatment system located at the Property, and Vapor Mitigation systems put in place at the direction of the Regulatory Agencies.  Remedial Systems include the current Groundwater Remediation System as defined above, a future engineering controls implemented for Vapor Mitigation purposes, and any changes to those systems as directed by the Regulatory Agencies.

"Remedial Systems" shall also include any and all changes, revisions, or modifications that the CERCLA Lead Agency authorizes pursuant to state or federal law while this Covenant remains in existence. If the CERCLA Lead Agency authorizes changes, revisions, modifications or decommissioning of any portion of the Remedial Systems, those changes by the CERCLA Lead Agency will be noted in the Aerojet General Rancho Cordova Superfund Site repositories.

## ARTICLE III

### GENERAL PROVISIONS

3.01.  Runs with the Land.  This Covenant sets forth Environmental Restrictions that apply to and encumber the Property and every portion thereof no matter how it is improved, held, used, occupied, leased, sold, hypothecated, encumbered, or conveyed. This Covenant: (a) runs with the land pursuant to Health and Safety Code section 25355.5 and Civil Code section 1471; (b) inures to the benefit of and passes with each and every portion of the Property; (c) is for the benefit of, and is enforceable by, the

Regulatory Agencies; and (d) is imposed upon the entire Property unless expressly stated as applicable only to a specific portion thereof.

3.02.   Binding upon Owners/Occupants.   This Covenant binds all Owners and Occupants of the Property, their heirs, successors, assignees, agents, employees, and lessees.   Pursuant to Civil Code section 1471, all successive Owners of the Property are expressly bound hereby for the benefit of the Regulatory Agencies.   This Covenant is binding on all Owners and Occupants, and their respective successors and assignees, only during and in respect of their respective successive periods of ownership or occupancy such that an Owner's or Occupant's rights and obligations under this Covenant shall terminate upon transfer, expiration, or termination of the Owner's or Occupant's interest in the Property, except that such Owner's or Occupant's liability for any violations of, or non-compliance with, the Environmental Restrictions of this Covenant or any acts or omissions during such ownership or occupancy shall survive any transfer, expiration, or termination of the Owner's or Occupant's interest in the Property.

3.03.   Incorporation into Deeds and Leases.   This Covenant and its Environmental Restrictions shall be incorporated by reference in each and every deed and Lease for any portion of the Property.

3.04.   Conveyance of Property.   The Owner shall provide Notice to the Regulatory Agencies not later than thirty (30) calendar days after any conveyance or receipt of any ownership interest in the Property, or any Lot or Parcel, (excluding leases, mortgages, liens, and other non-possessory encumbrances).   The Notice shall include the name and mailing address of the new Owner of the Property, or any such Lot or Parcel, and shall reference the site name ("Aerojet General Corporation Superfund Site"), the site code ("DTSC Project Code 100002"), and the APN ("072-0231-125") listed on page one of this Covenant.   If the Property, or any such Lot or Parcel, has been assigned a different APN from the one listed on page one of this Covenant, or previously associated with the Property or the Lot or Parcel as identified in a prior notice to the Regulatory Agencies under this subsection, each such APN that covers the Property or such new ownership of that Lot or Parcel must be provided in the Notice.   The Regulatory Agencies shall not, by reason of this Covenant, have authority

Page 9

to approve, disapprove, or otherwise affect a proposed conveyance, except as otherwise provided by law or administrative order.

3.05.   Costs of Administering the Covenant.  The Department and RWQCB have already incurred and will in the future incur costs associated with this Covenant. Therefore, the Covenantor hereby covenants for the Covenantor and for all subsequent Owners that, pursuant to California Code of Regulations, title 22, section 67391.1(h) and Water Code section 13304, the Department's and RWQCB's costs in administering, implementing, and enforcing this Covenant shall be paid by the Owner, or on the Owner's behalf by another party. Pursuant to California Code of Regulations, title 22, section 67391.1(h), the Owner is ultimately responsible for costs incurred pursuant to this Section 3.05 if such costs are not paid by another party on the Owner's behalf.

3.06.   Advance Notice on Conveyance of Property.  At least 60 days prior to conveyance of the Property to any other agency, person, and/or entity, the Owner shall provide notice of such intended conveyance to the Regulatory Agencies and Notice parties as set forth in 7.04. If the Property has been subdivided and a common interest obligation is in place that will maintain all required mitigation measures, this requirement does not apply to the transfer of individual Lots or Parcels within the Property. The Department shall not, by reason of this Covenant, have authority to approve, disapprove, or otherwise affect proposed conveyance, except as otherwise provided by law or by administrative order.

3.07.   Transfer of Property to Multiple Owners.  The Owner shall, prior to transfer, propose a mechanism for the Department's approval that will provide for performance of the obligations set forth in Sections 3.04 and 4.10 of this Covenant on behalf of multiple Owners of the Property if the Property is subdivided into more than two separate subparcels creating either of the following conditions: (1) there will be more than ten Owners of different subparcels on the Property, or (2) any of the subparcels will become a common interest development as defined in Section 1351 of the California Civil Code, or would in any other way become subject to multiple separate ownership interests.

## ARTICLE IV

### RESTRICTIONS AND REQUIREMENTS

4.01.   Prohibited Uses.   The Property shall not be used for any of the following purposes without the Department's prior, specific written approval for that land use pursuant to Health and Safety Code section 25227:

(a)   A new use of the Property, except that the Department's approval is not required for the use, modification or expansion of an existing commercial, industrial or manufacturing facility.

(b)   Subdivision of the Property; except for subdivision to divide that portion of the parcel that contains hazardous materials, as defined in Health and Safety Code section 25260(d), from other portions of that parcel.

(c)   Construction or placement of a building or structure on the land that is intended for use as any of the following, or the new use of an existing structure for the purpose of serving as any of the following:

(i)   A residence, including any mobile home or factory built housing, constructed or installed for use as residential human habitation.

(ii)   A hospital for humans.

(iii)   A public or private school for persons under 21 years of age.

(iv)   A day care center for children.

(v)   A permanently occupied human habitation, other than those used for commercial, industrial, or manufacturing purposes.

4.02.   Approval Request:   Any request for the Department's written approval under Section 4.01 above shall be submitted to U.S. EPA and RWQCB simultaneously with the request submitted to the Department, and shall provide U.S. EPA and RWQCB with actual, prior notice and opportunity to comment.  The Department shall provide written response that the notice has been received and an estimated schedule for Agency comment.

4.03.   Soil Management.   Any contaminated soils or contaminated soils and materials shall not be disturbed without a Soil Management Plan approved by the Department that includes an appropriate Health and Safety Plan.  Any such soils and materials brought to the surface by grading, excavation, trenching or backfilling shall be

performed under an appropriate Health and Safety Plan, including, but not limited to, trench worker safety provisions based upon residual concentrations of chemicals at the Property, and managed in accordance with all applicable provisions of State and federal law.

4.04. <u>Prohibited Activities.</u>  Unless a change is authorized pursuant to Article VI of this Covenant, the following activities are specifically prohibited on the Property without prior written approval from the Department:

(a)     Activity that may alter, interfere with, or otherwise affect the integrity or effectiveness of, or the access to, any investigative, remedial, monitoring, operation or maintenance system (e.g., monitoring system, groundwater extraction and treatment system, vapor mitigation system) associated with the Site, or activity required for the Property under either this Covenant or applicable federal, state or local law that will impact remedy effectiveness.

(b)     Any new construction planned on any portion of the Property. The Property is contaminated by VOCs.  The Department may approve new construction where the Owner has conducted a Department-approved subsurface investigation and finds that VOCs no longer impact the Property; or where the Department approves and the Owner implements additional response actions to either adequately remediate the VOCs to eliminate the risk to human health and the environment, such as buildings and structures appropriately designed and constructed with Vapor Mitigation to protect Occupants, and including appropriate worker and public health and safety precautions.

4.05. <u>Prohibitions Relating to New Construction</u>.  The remedy was determined by U.S. EPA in the most recent five-year review as remaining protective for the existing structures if the existing structures were not disturbed. However, if approved by the Department in writing pursuant to 4.04(b), above, these buildings located on the Property will be demolished and new buildings will be constructed. It is anticipated that such future construction will allow for appropriate commercial/industrial use. However, any new construction activity has the potential to interfere with existing remedial systems. New construction could also create new exposure pathways, or exposure

scenarios that may no longer be within an acceptable risk range for that use. Therefore, in addition to the requirements/restrictions listed in 4.04(b) above:

(a)    No Owner or Occupant shall construct any building on any portion of the Property without prior written approval by the CERCLA Lead Agency that the construction will not interfere with the remedy.

(b)    Prior to construction of any building intended for occupancy on any portion of the Property, the Owner must receive written Department approval of a building-specific Vapor Mitigation design and plan, including an operation and maintenance plan, an operation and maintenance agreement, and financial assurance.

(c)    Prior to occupancy of the new construction, a Department-approved indoor air sampling plan, inclusive of threshold values for occupancy, must be implemented and concentrations of COCs in these samples must be below the threshold values.  All analytical results must be submitted to the Department prior to occupancy.

(d)    Any mitigation measures installed in the new construction must be operated and maintained, in accordance with the Department-approved operation and maintenance plan, for as long as those mitigation measures are required for the intended use of the new building.

(e)    When additional mitigation measures are implemented on the Property that are determined to be necessary by either CERCLA Lead Agency or the Department for the safe use of such new construction, then no activities shall be conducted at the Property that will interfere with the integrity or effectiveness of those necessary additional mitigation measures.

(f)    For purposes of Section 4.05(a) and Section 4.05(b), the term "building" does not include roofed structures if the walls enclose less than half the space being occupied, or structures without a roof. The term "new construction" as used in Sections 4.04 and 4.05 shall not apply to the construction of such open structures.

4.06.   Non-Interference with Remedial Systems.

(a)    The Owner and Occupant shall not participate in or allow any

activity that would interfere with the operation of the Remedial Systems or other Site-wide response activities at the Property without prior written approval from the CERCLA Lead Agency, such approval not to be unreasonably withheld.

(b)     All uses and development of the Property shall preserve the integrity of the Groundwater Remedial System as noted in Exhibit D and all future Remedial Systems or Site-wide response activities as constructed in response to this Covenant.

4.07.   Non-Interference and Provision of Covenant to Easement Holders.

(a)     The Owner and Occupant shall not participate in or allow any activity that would interfere with the operation of the Site-wide response activities at the Property (e.g., the groundwater monitoring, extraction and treatment equipment and the current building foundations serving as caps to address vapor intrusion in the existing buildings) without prior written approval from the CERCLA Lead Agency, such approval not to be unreasonably withheld.

(b)     All uses and development of the Property shall preserve the integrity of the remedy selected in the Record of Decision and subsequent decision documents.

(c)     Owner shall provide a copy of this Covenant to all Occupants and easement holders for all or any portion of the Property.

4.08.   Access for the Regulatory Agencies.  The Regulatory Agencies shall have reasonable right of entry and access to the Property for inspection, investigation, remediation, monitoring, and other activities consistent with the purposes of this Covenant deemed necessary by the Regulatory Agencies to protect the public health or safety or the environment.  Nothing in this instrument shall limit or otherwise affect the U.S EPA's right of entry and access, or U.S. EPA's authority to take response actions under CERCLA; the National Contingency Plan, 40 Code of Federal Regulations Part 300 (1997) and its successor provisions; or federal law.  Nothing in this instrument shall limit or otherwise effect the Department's right of entry and access, or authority to take response actions under CERLCA; the National Contingency Plan, 40 Code of Federal Regulations Part 300 (1997) and its successor provisions; Chapter 6.8, Division 20 of

Page 14

the California Health and Safety Code; California Civil Code; or other applicable State law; or the RWQCB's authority under applicable law.

    4.09.   Access for Implementing Response Actions.   The entity or person responsible for implementing response activities under a Regulatory Agency-approved plan for any action to be taken on the Property shall have reasonable right of entry and access to the Property for the purpose of implementing those activities until the Regulatory Agencies determine that response activities are not required.

    4.10.   Inspection and Reporting Requirements.   The Owner, or another working on behalf of the owner as provided in Section 3.07 shall conduct an annual inspection of the Property verifying compliance with this Covenant and shall submit an annual inspection report to the Department and RWQCB for their approval by February 15th of each year.   The annual inspection report must include the dates, times, and names of those who conducted the inspection and reviewed the annual inspection report.   It also shall describe how the observations that were the basis for the statements and conclusions in the annual inspection report were performed (*e.g.*, drive by, fly over, walk in, etc.).   If any violation is noted, the annual inspection report must detail the steps taken to correct the violation and return to compliance with this Covenant.   If the Owner or another on the Owner's behalf, identifies any violations of this Covenant during the annual inspection or at any other time, the Owner, or another working on behalf of the Owner, must within ten (10) calendar days of identifying the violation:

        (a)    Determine the identity of the party in violation;

        (b)    Send a letter advising the party of the violation of the Covenant; and

        (c)    Demand that the violation cease immediately.

Additionally, a copy of any correspondence related to the violation of this Covenant shall be sent to the Department and RWQCB within ten (10) calendar days of its original transmission.

## ARTICLE V

### ENFORCEMENT

    5.01.   Enforcement.   Failure of any Owner or Occupant to comply with this Covenant shall be grounds for the Department or RWQCB to require modification or

removal of any Improvements constructed or placed upon any portion of the Property in violation of this Covenant.  Violation of this Covenant, such as failure to submit (including submission of any false statement) record or report to the Department or RWQCB shall be grounds for the Department or RWQCB to pursue administrative, civil, or criminal actions, as provided by law.

5.02.  <u>Enforcement Rights of U.S. EPA as a Third-Party Beneficiary</u>.  U.S. EPA, as a third-party beneficiary, has the right to enforce the Environmental Restrictions of this Covenant.

5.03.  <u>U.S. EPA's CERCLA Authority</u>.  Nothing in this Covenant shall limit or otherwise affect U.S. EPA's right of entry and access, or U.S. EPA's authority to take response actions, under CERCLA; the National Contingency Plan, 40 Code of Federal Regulations, Part 300, and its successor provisions; or federal law.

**ARTICLE VI**

<u>VARIANCE, REMOVAL, AND TERM</u>

6.01.  <u>Variance</u>.  Any person may apply to the Department for a written variance from any of the Environmental Restrictions of this Covenant.  If the application is submitted to the Department, such application shall be made in accordance with Health and Safety Code section 25223.  After consulting with the RWQCB, the Department shall make the decision on the variance and shall ensure that its decision is consistent with any enforcement orders or permits issued by RWQCB regarding the Property.  A copy of the application shall be submitted to RWQCB, U.S. EPA, and Covenantor simultaneously when it is submitted to the Department.  No variance may be granted under this Section without prior Notice to and an opportunity to comment by U.S. EPA and Covenantor.

6.02  <u>Removal of Environmental Restrictions</u>.  Any person may apply to the Department or RWQCB to remove any of the Environmental Restrictions of this Covenant as it applies to all or any portion of the Property.  If the application is submitted to the Department, such application shall be made in accordance with Health and Safety Code section 25224. After consulting with RWQCB, the Department shall make the decision on the termination or modification and shall ensure its decision is

consistent with any enforcement orders or permits issued by RWQCB regarding the Property. A copy of the application shall be submitted to RWQCB, U.S. EPA, and Covenantor simultaneously when it is submitted to the Department. No removal may be granted under this Section without prior Notice to and an opportunity to comment by U.S. EPA and Covenantor.

6.03. Term. Unless ended in accordance with Section 6.02, by law, or by the Department, after consulting with RWQCB, in the exercise of its discretion, and after providing Notice to and an opportunity to comment by U.S. EPA and Covenantor, this Covenant shall continue in effect in perpetuity.

## ARTICLE VII
### MISCELLANEOUS

7.01. No Dedication or Taking Intended. Nothing set forth in this Covenant shall be construed to be a gift or dedication, or offer of a gift or dedication, of the Property, or any portion thereof to the general public or anyone else for any purpose whatsoever. Nothing in this Covenant shall be construed to effect a taking under state or federal law.

7.02. References to Regulatory Agencies. All references to the Regulatory Agencies, the Department, RWQCB or U.S. EPA include successor agencies, departments or other successor entities of the Regulatory Agencies, the Department, RWQCB or U.S. EPA.

7.03. Recordation. The Covenantor shall record this Covenant, with all referenced Exhibits, in the County of Sacramento within ten (10) calendar days of the Covenantor's receipt of a fully executed original.

7.04. Notices. Whenever any person gives or serves any Notice ("Notice" as used herein includes any demand or other communication with respect to this Covenant), each such Notice shall be in writing, addressed to the party to be served at the address(es) set forth below, or at such other address for which that party may have given notice under the provisions of this Section, and shall be deemed effective: (i) when delivered, if personally delivered to the person being served (or, for delivery to an entity, to the person designated for such entity in the address(es) provided below or, if none, to an officer of a corporate party, a manager or officer of a limited liability company, or a partner of a partnership (as applicable) being served); or (ii) five (5)

calendar days after deposit in the mail, if mailed by United States mail, postage paid, certified, return receipt requested:

| | |
|---|---|
| To Covenantor: | Aerojet Rocketdyne, Inc.<br>P.O. Box 13222<br>Sacramento, CA  95813<br>Attn:  Legal Department |
| To Owner: | Name and address of any new owner as identified to the Department under Section 3.04 of this Covenant. |
| To Department: | Branch Chief<br>Brownfields and Environmental Restoration Program<br>Department of Toxic Substances Control<br>8800 Cal Center Drive, 3rd Floor<br>Sacramento, CA  95826-3200 |
| To RWQCB: | Executive Officer<br>California Regional Water Quality Control Board<br>Central Valley Region<br>11020 Sun Center Drive, #200<br>Rancho Cordova, CA  95670-6114 |
| To U.S. EPA | U.S. Environmental Protection Agency<br>Region IX<br>Attention:  Remedial Project Manager<br>75 Hawthorne Street<br>San Francisco, CA  94105-3901 |

Any party may change its address or the individual to whose attention a Notice is to be sent by giving written Notice in compliance with this Section.

7.05.  <u>Partial Invalidity</u>.  If this Covenant or any of its terms are determined by a court of competent jurisdiction to be invalid for any reason, the surviving portions of this Covenant shall remain in full force and effect as if such portion found invalid had not been included herein.

7.06.  <u>Statutory and Regulatory References</u>.  All statutory and regulatory references include successor provisions.

7.07.  <u>Counterparts</u>.  The Parties may execute this Covenant in two (2) or more counterparts, which shall, in the aggregate, be signed by all Parties; each counterpart shall be deemed an original of this Covenant as against any Party who has signed it.  In

Page 18

the event of any disparity between counterparts produced, the counterpart recorded in the Official Records of Sacramento County, California, shall be controlling.

      7.08.  <u>Representative Authority</u>.  The undersigned representative of each party to this Covenant certifies that he or she is fully authorized to enter into the terms and conditions of this Covenant and to execute and legally bind that party to this Covenant. Further, if this Covenant is held invalid because the undersigned representative lacked the authority to execute the Covenant, the undersigned representative agrees to be liable to the Department for the costs of securing any necessary properly executed and record replacement Covenant.

[Signatures on Next Page]

IN WITNESS WHEREOF, the Parties execute this Covenant.

Covenantor:   Aerojet Rocketdyne, Inc.

By: _____

Print Name and Title: __DAVID HATCH , VP & COO EASTON PLACE ESTATES__

Date: __12 - 15 - 2021__

California Department of Toxic Substances Control

By: _____

Print Name and Title: __Hortensia Muniz. Branch Chief.__

Date: __12·16·2021.__

California Regional Water Quality Control Board, Central Valley Region

By: ___Signed in Counterpart___

Print Name and Title: ___Signed in Counterpart___

Date: ___Signed in Counterpart___

**IN WITNESS WHEREOF, the Parties execute this Covenant.**

**Covenantor:    Aerojet Rocketdyne, Inc.**

**By:**                         Signed in Counterpart

**Print Name and Title:**    Signed in Counterpart

**Date:**                    Signed in Counterpart

**California Department of Toxic Substances Control**

**By:**                         Signed in Counterpart

**Print Name and Title:**    Signed in Counterpart

**Date:**                    Signed in Counterpart

**California Regional Water Quality Control Board, Central Valley Region**

**By:**                         _Rita Fale_

**Print Name and Title:** _Patrick Pulupa, Executive Officer_

**Date:**                    _December 17, 2021_

**Page 20**

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of ~~Sacramento~~

On ~~December 15, 2021~~ before me,

_____ ~~Christina M. Groen, Notary Public~~ _____
*(space above this line is for name and title of the officer/notary),*

personally appeared ~~David Hatch~~ _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

CHRISTINA M. GROEN
COMM. #2230826
Notary Public - California
Sacramento County
My Comm. Expires Mar. 9, 2022

_____ (seal)
Signature of Notary Public

Page 21

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Sacramento

On December 16, 2021 before me,

Christina M. Green, Notary Public

*(space above this line is for name and title of the officer/notary),*

personally appeared Hortensia Muniz , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

CHRISTINA M. GROEN
COMM. #2230826
Notary Public · California
Sacramento County
My Comm. Expires Mar. 9, 2022

_____ (seal)
Signature of Notary Public

Page 22

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only
the identity of the individual who signed the document to which this
certificate is attached, and not the truthfulness, accuracy, or validity of
that document.

State of California
County of Sacramento

On 12/17/2021 before me,

Alicia McDonald, notary public
(space above this line is for name and title of the officer/notary),

personally appeared Patrick Pulupa , who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal,

```
ALICIA MCDONALD
Notary Public - California
Sacramento County
Commission # 2328766
My Comm. Expires May 19, 2024
```

_____ (seal)
Signature of Notary Public

Page 23

27777.360
07/16/2021
PFF

# EXHIBIT "A"
## DESCRIPTION OF VAPOR MITIGATION OVERLAY

All that real property situated in the City of Rancho Cordova, County of Sacramento, State of California, being a portion of the Lands of Aerojet Rocketdyne, Inc., an Ohio Corporation and New Resultant Parcel 9 as described in that certain Grant Deed recorded August 12, 2014 in Book 20140812 at Page 0634, Official Records of Sacramento County, being more particularly described as follows:

Beginning at the northwest corner of Lot 1 as shown on that map entitled "Subdivision Number 2004-0035.01 Easton Phase 1 Large Lot Map" filed for record September 17, 2015 in Book 386 of Maps at Page 4, Sacramento County Records, thence from the **POINT OF BEGINNING** and along the westerly line of said Lot 1, South 26°06'45" East a distance of 26.86 feet; thence continuing along said westerly line South 30°19'16" East a distance of 1247.14 feet; thence leaving said westerly line for the following six (6) courses and distances:

1. South 61°24'50" West a distance of 1189.10 feet;
2. North 26°43'48" West a distance of 482.43 feet;
3. South 63°40'13" West a distance of 1365.34 feet;
4. North 23°20'08" West a distance of 150.44 feet;
5. North 26°06'36" West a distance of 694.57 feet to the northerly boundary line of said New Resultant Parcel 9;
6. North 63°53'24" East a distance of 2459.68 feet along said north boundary line to the **POINT OF BEGINNING.**

Containing 60.389 acres of land, more or less

*See Exhibit "A-1", plat to accompany description attached hereto and made a part hereof.*

This legal description was prepared by me or under my supervision pursuant to Section 8729 (2) of the Professional Land Surveyors Act.

*Paul Ferguson*

Paul Ferguson, Jr., PLS 9265
License Expiration Date: 03-31-2022

Date: __7/19/2021__

Description prepared by:
**MACKAY & SOMPS CIVIL ENGINEERS, INC.**
1025 Creekside Ridge Drive, Suite 150, Roseville, CA 95678
P:\27777\survey-MS\mapping\desc\BOU Parcel 4\Vapor Mitigation Area DESC.docx

Page 1 of 1



LEGEND

| O | DIMENSION POINT |
| B.M. | BOOK OF MAPS |
| O.R. | OFFICIAL RECORDS |
| P.O.B. | POINT OF BEGINNING |
| P.U.E. | PUBLIC UTILITY EASEMENT |
| R/W | RIGHT-OF-WAY |
| (1) | 386 B.M. 4 |

SCHNITZER
STEEL INDS. INC
072-0231-139

S.P.T.C.J.P.A.
1996/0906 O.R. 1664

N26°06'36"W 694.57'

N23°20'08"W
150.44'

S63°40'13"W 1365.34'

FOLSOM BOULEVARD

N63°53'24"E 2459.68'

S26°06'45"E 26.86'(1)

VAPOR MITIGATION OVERLAY
60.389±AC

N26°43'48"W 482.43'

S61°24'50"W 1189.10'

S30°19'16"E 1241.14'(1)

10' P.G.E.
EASEMENT PER
8804/1 O.R. 725

60' P.U.E. EASEMENT
PER 1992 O.R. 115

LOT 1
386 B.M. 4

P.O.B.

LICENSED LAND SURVEYOR
PAUL FERGUSON JR.
No. 9265
7/9/21
STATE OF CALIFORNIA

SHEET 1 OF 1

EXHIBIT "A-1"

VAPOR MITIGATION OVERLAY
LANDS OF AEROJET ROCKETDYNE, INC.
PORTION OF RANCHO RIO DE LOS AMERICANOS
CITY OF RANCHO CORDOVA
COUNTY OF SACRAMENTO
STATE OF CALIFORNIA

**MACKAY & SOMPS**
ENGINEERS                    PLANNERS                    SURVEYORS
1025 Creekside Ridge Drive, Suite 150, Roseville, CA 95678  (916) 773-1189

| DRAWN BY | PFF |
| SCALE | 1"=400' |
| DATE | 07/19/2021 |
| JOB NO. | 27717.360 |

IF A DISCREPANCY EXISTS BETWEEN THIS EXHIBIT AND THE ASSOCIATED DESCRIPTION, THE DESCRIPTION HOLDS. THIS EXHIBIT IS FOR GRAPHIC PURPOSES ONLY.

N

**EXHIBIT B**
**Chemicals of Concern in Soil and Vadose Zone at Property**

| Chemical of Concern | Unrestricted Use Level[1](ug/m3) | Pre-Remedy Concentration[2] (ug/m3) | Post-Remedy Concentration[2] (ug/m3) |
|---|---|---|---|
| Freon-12 | 100 | 470 | 640 |
| Vinyl Chloride | 0.0095 | 7400 | 980 |
| 1,3-Butadiene | 0.017 | 170 | 28 |
| Freon-113 | 5200 | 46000 | 37000 |
| 1,1-Dichloroethene | 73 | 27000 | 2700 |
| trans-1,2-Dichloroethene | 83 | 9700 | 380 |
| Hexane | 14 | 550 | 38 |
| 1,1-Dichloroethane | 1.8 | 300 | 380 |
| cis-1,2-Dichloroethene | 8.3 | 990000 | 170000 |
| Chloroform | 0.12 | 1200 | 680 |
| 1,1,1-Trichloroethane | 1000 | 950 | 200 |
| Carbon Tetrachloride | 0.47 | 430 | 280 |
| Benzene | 0.097 | 7.8 | 5.3 |
| Trichloroethene | 0.48 | 1800000 | 130000 |
| Toluene | 310 | 110000 | 4200 |
| Tetrachloroethene | 0.46 | 19000 | 5100 |
| m,p-Xylene | 100 | Not detected | 180 |

1 Source: Residential Ambient Air screening levels are from the DTSC HERO HHRA Note Number 3 (DTSC June 2020) or the USEPA Regional Screening Levels (USEPA November 2021)
2 Source: Table 5, Remedial Action Completion Report Soil Vapor Extraction System, Central 49000 Area, Perimeter Groundwater Operable Unit (OU-5), Aerojet Superfund Site (Stantec, June 2021)
ug/m3 - micrograms per cubic meter

49021

49020

49011

49015

Exhibit C
Existing Structures



N

## LEGEND

| | |
|---|---|
| ○ | DIMENSION POINT |
| B.M. | BOOK OF MAPS |
| O.R. | OFFICIAL RECORDS |
| P.U.E. | PUBLIC UTILITY EASEMENT |
| R/W | RIGHT-OF-WAY |
| (1) | 386 B.M. 4 |
| ⊕ | EX. MONITORING WELL |
| – – – | EX. RAW WATER PIPE |

US HIGHWAY 50
S.P.R.R.

6" RAW WATER PIPE

SCHNITZER
STEEL INDS. INC.
072-0231-139

12" RAW
WATER PIPE

PIPELINE
ABANDONED

12" RAW
WATER PIPE

10" RAW
WATER PIPE

S63°40'13"W 1365.34'

6" RAW
WATER PIPE

SUPERFUND AREA OVERLAY
71.232 ACRES

10' P.G.E.
EASEMENT PER
88041 O.R. 725

SHEET 1 OF 1

60 P.U.E. EASEMENT
PER 1992 O.R. 116

LOT 1
386 B.M. 4

12-09-2021    16:56:19    dabdoese    P: 1.27781_0A WaterPin \Exh-W.Area 49 \Exhibit D-Existing Wells \Exhibit D — Wells and Pipelines-with monitoring wells.dwg
(1) P: 1.27777 \Survey-445 \mapping Ideas \800J Parcel 4 \Plat PARCEL 4 BASE.dwg   (2) P: 1.27777 \Users \Iockec/onquez \Usersck for pipes and excavtion wells.dwg   (3) P: 1.27781_0A WaterPin \Exh-W.Area 49 \Exhibit B-Existing Wells \Boxes WS_Master Compile v02_CAD PS-MA083.dwg

IF A DISCREPANCY EXISTS BETWEEN THIS EXHIBIT AND THE ASSOCIATED DESCRIPTION,
THE DESCRIPTION HOLDS. THIS EXHIBIT IS FOR GRAPHIC PURPOSES ONLY.

## EXHIBIT "D"
### WELLS AND PIPELINES
### LANDS OF AEROJET ROCKETDYNE, INC.
PORTION OF RANCHO RIO DE LOS AMERICANOS
CITY OF RANCHO CORDOVA
COUNTY OF SACRAMENTO          STATE OF CALIFORNIA

## MacKay & SOMPS
### ENGINEERS       PLANNERS       SURVEYORS
1025 Creekside Ridge Drive, Suite 150, Roseville, CA 95678 (916) 773-1189

| DRAWN BY | SCALE | DATE | JOB NO. |
|---|---|---|---|
| DAB | 1"=400' | 12/09/2021 | 27777.360 |